Doris J. WHITTLEY and Otis Merle Whittley, Appellants,

v.

Adrian O. HESTON, O.D., Appellee.

No. 14–96–00828–CV.

Court of Appeals of Texas, San Antonio.

Sept. 17, 1997.

---

Marion W. Cain, Robert Roy Hamilton, San Antonio, for appellants.

Alex M. Miller, Mark R. Stein, Allen, Stein, Powers, Durbin & Hunnicutt, P.C., San Antonio, for appellee.

Before RICKHOFF, STONE, and DUNCAN, JJ.

**OPINION ON APPELLEE'S MOTION FOR REHEARING**

STONE, Justice.

Appellee, Adrian O. Heston, O.D., has filed a motion for rehearing complaining of seemingly contradictory language in the conclusion of the court's original opinion. The motion for rehearing is granted in part. We withdraw the opinion of July 23, 1997, and substitute this opinion in its place for the sole

purpose of clarifying the language in the conclusion of the opinion.

Doris and Otis Whittley appeal from a summary judgment granted in favor of Dr. Adrian Heston in a medical malpractice action. The Whittleys brought suit against Dr. Heston for damages arising from the doctor's alleged misdiagnosis of an eye malady suffered by Doris Whittley.[1] Because we find that Dr. Heston's summary judgment proof did not entitle him to judgment as a matter of law, we reverse and remand.

### FACTUAL BACKGROUND

On January 12, 1994, Doris Whittley experienced a sudden onset of impaired or clouded vision in her left eye and on the same day visited Dr. Adrian Heston, a therapeutic optometrist. Dr. Heston examined her eye and observed a "floater."[2] Dr. Heston told Whittley that a floater could not be treated and it would likely disappear. Whittley's condition did not improve, and within five days she contacted her primary care physician for a referral to an ophthalmologist for a second opinion. Thirteen days later Whittley was examined by Dr. Calvin Mein, a board certified ophthalmologist, who diagnosed her condition as a retinal tear that had progressed to the point of detachment. Despite several surgeries, Whittley's vision in her left eye is severely compromised.

### STANDARD OF REVIEW

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co. Inc.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); TEX.R. CIV. P. 166a(c). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Nixon,* 690 S.W.2d at 549; *Montgomery,* 669 S.W.2d at 311. When a trial court's order granting a summary judgment does not enumerate the grounds upon which the judgment is based, the judgment will be affirmed on appeal if any of the theories advanced in the motion are meritorious. *Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

### SUMMARY JUDGMENT MOTION AND PROOF

■ Dr. Heston's only stated ground for summary judgment is that he complied with the standard of care. Although Dr. Heston asserts on appeal that he also moved for summary judgment on the issue of proximate cause, his motion does not support this claim. Specifically, the motion states that the deposition testimony of the Whittleys' expert, Dr. Mein, and the affidavit of Dr. Heston "conclusively shows that this defendant complied with the required standard of care." While the portion of Dr. Mein's deposition testimony cited by Dr. Heston arguably refers to causation, the grounds for a summary judgment must be expressly presented in the motion; it is not sufficient that the grounds might be gleaned from the summary judgment evidence. *See McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 339 (Tex. 1993). Accordingly, our review of the judgment is limited to the question of whether Dr. Heston established as a matter of law the applicable standard of care and that his actions conformed to that standard. *See City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

---

1. The Whittleys also sued their health care provider, Humana Health Plan of Texas, Inc. d/b/a Humana Health Plan of San Antonio, for failure to refer Mrs. Whittley to an ophthalmologist. Whittley's initial request for a referral to an ophthalmologist, made five days after Whittley saw Dr. Heston, was refused by Whittley's primary care physician. The claims against Dr. Heston were severed from the claims against Humana.

2. A "floater" is described in the record as a detached particle of the eye's vitreous, which causes a shadow on the retina. The vitreous, which is attached to the back of the eye, loosens with age and as the vitreous loosens, floaters may appear.

### 1. The Standard of Care

■ The threshold question in a medical malpractice case is the standard of care. *Johnson v. Susat*, 773 S.W.2d 601, 603 (Tex. App.—Dallas 1989, writ denied). It is axiomatic that the standard of care must be established in order to determine whether the doctor's actions deviated from it. *Chopra v. Hawryluk*, 892 S.W.2d 229, 233 (Tex. App.—El Paso 1995, writ denied). Because assessing the standard of care in a medical malpractice case requires skills not generally possessed by a lay person, the fact finder must be guided by expert medical testimony. *See St. John v. Pope*, 901 S.W.2d 420, 423 (Tex.1995); *White v. Wah*, 789 S.W.2d 312, 315–16 (Tex.App.—Houston [1st Dist.] 1990, no writ). It is not sufficient for a medical expert simply to state that he or she knows the standard of care and conclude that it was met. Rather, the expert must state what the standard is and explain how the defendant's acts met it. *Chopra*, 892 S.W.2d at 233.

■ The uncontroverted testimony of an interested expert witness will support a summary judgment if the evidence is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. TEX.R. CIV. P. 166a(c). In the medical malpractice context, the affidavit of an interested expert is sufficient to establish compliance with the standard of care if the witness:

(1) states that he is familiar with the applicable standard of care,

(2) states with specificity each examination and treatment performed,

(3) states that the acts of the physician were consistent with the appropriate standard of care, and

(4) states that there was no causal connection between the physician's acts and the plaintiff's injury.

*Edwards v. Garcia–Gregory*, 866 S.W.2d 780, 785 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

### 2. The Affidavit of Dr. Heston

■ In support of his motion for summary judgment, Dr. Heston submitted his affidavit testimony. In his affidavit Dr. Heston states his qualifications as a licensed therapeutic optometrist and states that he is familiar with the proper standard of care for reasonably prudent therapeutic optometrists in the community. He states that Whittley presented herself to him with complaints, and that he performed a thorough dilated examination with an indirect ophthalmoscope, which revealed a large floater moving in Whittley's eye. He saw no retinal tear or detachment, and felt that he was able to see her entire retina. Likewise, he did not feel that a referral to another healthcare provider was needed at that time. He further states in his affidavit that he advised Whittley of the "signs and symptoms to look for" and to call him if there were any changes. Finally, Dr. Heston concludes that his "examination and treatment of Mrs. Whittley was consistent with the appropriate standard of care for therapeutic optometrists in this community under the same or similar circumstances."

We find this affidavit conclusory regarding both the standard of care and Dr. Heston's compliance with the standard. While Dr. Heston states that he is familiar with the proper standard of care and concludes that his examination and treatment were consistent with the appropriate standard of car, he never articulates the standard of care. The complaints made by Whittley are never specified, nor is the examination and treatment described with specificity. Without a recital of these basic details, there is insufficient information to allow a fact finder to determine what the standard of care is and whether Dr. Heston met the standard. Under the circumstances, Dr. Heston's statement that he complied with the applicable standard of care is no more than the conclusion of an interested witness and does not support the summary judgment. *See Hall v. Tomball Nursing Center, Inc.*, 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Chopra*, 892 S.W.2d at 233.

### 3. The Deposition Testimony of Dr. Mein

■ Dr. Heston also relied upon the deposition testimony of Dr. Calvin Mein, a board certified ophthalmologist with a retinal specialty. Dr. Mein first examined and treated Whittley approximately two weeks after she

was seen by Dr. Heston. Dr. Heston argues that the following testimony from Dr. Mein establishes both the standard of care and Heston's compliance with that standard:

Q: If an optometrist is able to do a fully dilated examination with an indirect ophthalmoscope and did not see a retinal tear or detachment, in your opinion, is any referral to another doctor necessary?

A: That is a good question. I guess not. I mean, if—I think the standard of care for an optometrist would be to do a thorough dilated examination with an indirect ophthalmoscope. If he doesn't see anything, and he felt that he could see the entire retina and didn't see any retinal tear, there's no—nothing that says he has to refer that patient.

If he thought that, oh, gee, I wonder if I didn't see this area, or I can't quite see it, or there's a difficult exam, the pupil doesn't dilate like it should, or I'm not quite confident that I saw the whole thing, then I think he should refer. But that's up to the doctor; he's got to make the call. He looks—he's a—he's a trained—he's an optometrist; he's not an ophthalmologist, which we haven't gone into. But he is trained in—in doing eye examinations, and I guess that's his call. I mean, he's—he does a dilated exam and—and looks for a retinal tear or detachment, doesn't see one, he says, well—what I would do—what I do, when I look at a patient and don't find anything, I don't refer them to somebody else and see if they can. I look as hard as I can, and if I don't find anything I say, Look, these are the signs and symptoms of a detachment. Check your side vision. You know, Check it very carefully. If you notice any change, call me; we'll look again. Might miss it.

While this testimony arguably is supportive of Dr. Heston's claim that he did not breach the standard of care, it is only a small part of the testimony presented as summary judgment evidence. Dr. Mein also testified that a floater is a symptom of a serious problem such as a retinal tear or retinal detachment, and he described the complaints that Whittley presented to Dr. Heston as "classic history for a retinal tear." He stated that if a patient presented with a new floater, he would not feel confident only examining the patient with an indirect ophthalmoscope to look for retinal tears; he would perform a scleral depression to be absolutely sure there were no tears.

█ The testimony of Dr. Mein does not establish whether Dr. Heston's actions conformed to the proper standard of care. As noted above, Dr. Mein qualified his assessment of Dr. Heston's conduct by noting that Dr. Heston is an optometrist, not an ophthalmologist. Yet a therapeutic optometrist is held to the same standard of care as an ophthalmologist. TEX.REV.CIV. STAT.CODE ANN. § 4552–1.03(g) (Vernon Pamp.1997). However, Dr. Mein's testimony that he would not be comfortable without performing a scleral depression—something that was not done by Dr. Heston—does not establish whether Dr. Heston met the appropriate standard of care. A testifying expert cannot establish the standard of care by simply stating the course of action he would have taken under the same or similar circumstances. *Warner v. Hurt*, 834 S.W.2d 404, 407 (Tex. App.—Houston [14th Dist.] 1992, no writ). Dr. Mein did not indicate that performing a scleral depression is required of doctors or is part of the standard of care; rather, he merely stated that he as a retinal surgeon would perform such a test. We hold that Dr. Mein's deposition testimony cannot support the summary judgment.

Because we conclude that Dr. Heston failed to meet his summary judgment burden, we reverse the judgment of the trial court and remand the cause for trial on the merits.