NO. 07-03-0268-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 16, 2004
_____

LYDIA GONZALES, individually and as surviving spouse of
ISAAC GONZALES and on behalf of the estate of ISAAC GONZALES,
and as next friend of ANDREW GONZALES, STEVEN GONZALES,
LATICIA GONZALES, and JENNIFER GONZALES,

Appellants

v.

MICHAEL GRAVES, M.D.,

Appellee
_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A31394-0102; HON. JACK MILLER, PRESIDING
_____

***MEMORANDUM OPINION***
_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

Lydia Gonzales, individually and as the surviving spouse of Isaac Gonzales and on behalf of the estate of Isaac Gonzales, and as next friend of Andrew Gonzales, Steven Gonzales, Laticia Gonzales, and Jennifer Gonzales (Gonzales) appeal from an order dismissing, with prejudice, their claims again Michael Graves, M.D. Gonzales had sued Graves for medical malpractice. Thereafter, Graves twice moved to dismiss the suit. Each

motion involved sections of art. 4590i of the Texas Revised Civil Statutes. The first motion concerned §13.01 of the article while the second implicated §14.01. The motions were granted. Before us, Gonzales argues that the trial court erred in granting the motions because 1) their expert had the requisite experience to render an opinion in the matter and 2) the opinions rendered by their expert were not conclusory. We address the latter issue for it is dispositive and, upon doing so, affirm the order of dismissal.

### Issue Two -- Good Faith Expert Report

The grounds asserted by Gonzales in support of their second issue are twofold. Through the first, they assert that the trial court never granted the motion of Graves invoking §13.01 of art. 4590i, while in the second they posit that the trial court mistakenly determined that their expert's report was too conclusory. We overrule each.

To resolve the first proposition, we turn to the order of dismissal. Therein, the trial court stated, among other things, that it:

> . . . heard Defendant Graves' Motion to Dismiss under Article 4590i Sections 13.01(e), 13.01(d) and 13.01(r)(6) [on July 8, 2002]. No Order was signed or entered following this hearing by the Court. On December 20, 2002, this Court heard Defendant Graves' Motion to Dismiss and/or Strike under Article 4590i, Sections 14.01(a) and 14.01(c) on the grounds that Plaintiffs' expert, Michael Jay Bresler, M.D., was not qualified to render opinions as to the standard of care . . .

> . . . The Court finds that Michael Jay Bresler, M.D.[,] has not demonstrated qualifications necessary to state opinions as to the standard of care of a urologist, and . . . that . . . Bresler . . . does not qualify as an expert in the area of urology, nor has he demonstrated knowledge of the standard of care of a urologist as to diagnosing pulmonary conditions or abnormalities so as to qualify him as an expert as to the standard of care of a urologist under the circumstances of the allegations against . . . Graves . . . .

> The Court finds the opinions stated in the report of Michael Jay Bresler, M.D.[,] concerning Michael Graves, M.D.[,] are conclusory, and therefore the

2

report does not constitute a good faith effort to meet the requirements of *4590i, Section 13.01 . . . .*

THE COURT HEREBY MODIFIES ANY PREVIOUS RULINGS TO THE CONTRARY, AND IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss of Michael Graves, M.D.[,] is granted. The claims to [sic] which Plaintiffs make against . . . Graves . . . are hereby ordered dismissed with prejudice.

(Emphasis added). As can be seen, the trial court expressed in its order that it considered the §13.01 motion of Graves. So too did it conclude that, under §13.01, the opinions of Bresler were "conclusory." While it did not then expressly state that it granted the particular motion encompassing the §13.01 ground, one can nonetheless reasonably conclude from the context of the order that the Gonzales' failure to comply with art. 4590i, §13.01 was one of two bases on which the trial court dismissed the suit. We next turn to the allegation that Bresler's report was not conclusory. According to statute, one suing another for medical malpractice must

[n]ot later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period . . . (1) furnish to counsel for each physician . . . one or more expert reports, with a curriculum vitae of each expert listed in the report; or (2) voluntarily nonsuit the action against the physician. . . .

TEX. REV. CIV. STAT. ANN. art. 4590i, §13.01(d) (Vernon Supp. 2003).[1] Should the plaintiff fail in that regard, then the trial court must

. . . on the motion of the affected physician . . ., enter an order awarding as sanctions against the claimant or the claimant's attorney: (1) the reasonable attorney's fees and costs of court incurred by that defendant; (2) the forfeiture of any cost bond respecting the claimant's claim against that defendant to the

---

[1]As of September 1, 2003, the provision is now found at §73.351 of the Civil Practice and Remedies Code. Furthermore, the claimant no longer has 180 days to serve the report but only 120. TEX. CIV. PRAC. & REM. CODE ANN. §74.351(a) (Vernon Supp. 2004). However, because the trial court dismissed the suit before September 1, 2003, we cite to the old statute.

extent necessary to pay the award; and (3) the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling.

*Id.* §13.01(e); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (stating that the cause must be dismissed if the trial court determines that the report does not represent a good faith effort to comply with the definition of an expert report); *Kirksey v. Marupudi*, ___ S.W.3d ___, No. 07-03-076-CV, 2003 Tex. App. LEXIS 10852 at 3 (Tex. App.–Amarillo December 30, 2003, no pet.).

Next, to be adequate, the report must be written by an expert and provide a fair summary of that expert's opinions regarding the applicable standards of care, the manner in which the care rendered deviated from those standards, and the causal relationship between the deviation and the injury allegedly suffered. *Id.*§13.01(r)(6); *Kirksey v. Marupudi*, 2003 Tex. App. LEXIS 10852 at 4; *Chisholm v. Maron*, 63 S.W.3d 903, 906 (Tex. App.--Amarillo 2001, no pet.). In other words, the expert must do more than merely voice his opinions in the report. *Kirksey v. Marupudi*, 2003 Tex. App. LEXIS 10852 at 4. He is obligated to also inform the defendant of the *specific conduct* called into question and provide a basis for the trial court to conclude that the claims have merit. *American Transitional Care Ctrs. of Tex. Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001); *Kirksey v. Marupudi*, 2003 Tex. App. LEXIS 10852 at 4; *Chisholm v. Maron*, 63 S.W.3d at 906. And, though this does not require the claimant to marshal all his evidence, *Rittmer v. Garza*, 65 S.W.3d 718, 723 (Tex. App.--Houston [14th Dist.] 2001, no pet.), more than mere conclusions about the standard of care, its breach, and causation must be uttered. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 879; *Kirksey v. Marupudi*, 2003 Tex. App. LEXIS 10852 at 4. Finally, in assessing the adequacy of the

4

report, the trial court can look no further than to the four corners of the report. *Bowie Memorial Hospital v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 878; *Kirksey v. Marupudi*, 2003 Tex. App. LEXIS 10852 at 5. With this said, we turn to the report submitted by Bresler, the Gonzales' expert.

In it, Bresler describes the condition of Isaac Gonzales when he first appeared for treatment at the emergency room of Hi-Plains Hospital. At the time, Isaac complained of back pain, abdominal pain, slight wheezing, and shortness of breath. His appearance and vital signs at the time were also described, as was the medication prescribed to him by the emergency room physician. Thereafter, according to the report, Isaac was discharged and referred to a urologist for examination. The referring doctor apparently thought a urological examination was needed because Isaac had "tumors in his right scrotal sac." Graves was the urologist to whom Isaac was referred.

Upon appearing at Graves' office, Isaac underwent an "intravenous pyelogram, which was essentially unremarkable." Graves also advised Isaac "to have the scrotal tumors resected at some time in the future."

Within 52 hours of first visiting the emergency room and Graves, Isaac attempted to return to it. He had again experienced abdominal pain "and passed out in the car on the way to the hospital." He "was found in cardiac arrest and could not be resuscitated." The cause of death was "'bronchopneumonia with left empyema," according to the report.

Gonzales sued Graves contending that he provided Isaac an "incomplete medical assessment" and failed "to properly diagnose and . . . treat" him. In addressing the conduct of Graves purportedly evincing this lack of care (as opposed to that of the emergency room physician and nurse), Bresler stated in his report no more than what follows:

5

> Records provided to me from the Urologist . . . do not reveal documentation of a thorough history and physical as would be expected. Based on documentation of [Isaac's] symptoms in the Emergency Department on Feb 25, 1999 and documentation of his condition upon return to the Emergency Department approximately 52 hrs later in worse condition, it would be reasonable the [sic] conclude his symptoms had not significantly improved at the time he was examined by the urologist on Feb 26, 1999.
>
> The complaints [Isaac] presented with were not adequately addressed thus falling below the standard of care. [Isaac] likely would have survived his illness had it been diagnosed and treated in a timely manner.
>
> Based on my experience, medical knowledge and training in addition to the medical records provided to me, it is my opinion to a reasonable degree of medical certainty that failure to diagnose and treat Mr. Gonzales['] pulmonary abnormalities was the proximate cause of his death.

As can be seen, Bresler did use the term "standard of care" in his report. Yet, what it was goes unmentioned. We are left to guess at whether any standard of care obligates a urologist to diagnose a patient's lung condition (pneumonia) when the patient is referred to the doctor simply for purposes of examining tumors appearing on the patient's scrotum. And, we are not in a position to hold, as a matter of law, that physicians have the duty to diagnose ailments other than and completely unrelated to those for which the patient was originally referred to the doctor.

Furthermore, Bresler's statement that the records provided him did "not reveal documentation of a thorough history and physical as would be expected" falls short of filling the void. Simply put, what an expert may expect may well differ from what is required by the applicable standard of care. Just as there are many ways to skin a cat (as the old adage says), there may well be many ways to address an ailment. And, that one doctor may have followed a particular path had he been the attending physician does not mean that the path he would have followed represents the standard of care. *See Whittley v.*

6

*Heston*, 954 S.W.2d 119, 123 (Tex. App.–San Antonio 1997, no pet.) (holding that a testifying expert cannot establish the standard of care by simply stating the course of action he would have taken under the same or similar circumstances); *Warner v. Hurt*, 834 S.W.2d 404, 407 (Tex. App.–Houston [14th Dist.] 1992, no writ (holding the same); *Stanton v. Westbrook*, 598 S.W.2d 331, 333 (Tex. Civ. App.–Houston [14th Dist.] 1980, writ ref'd n.r.e) (holding the same). In other words, the physician must specify what the standard of care is, not what he would have done. Similarly, we deduce from *Whittley*, *Warner*, and *Stanton* that just because a physician opines that he expects something to be done does not define what the standard of care is; nor does it mean that what he would expect is what the standard requires to be done. In short, the standard of care is not subjective but objective and founded upon what a reasonable practitioner would have done under the same or similar circumstances. *See Schneider v. Haws*, 118 S.W.3d 886, 890 (Tex. App.--Amarillo 2003, no pet.) (stating that a doctor need only exercise ordinary or reasonable care and skill under the circumstances). And, Bresler fails to specify what is required of a reasonable practitioner under the circumstances confronting Graves.

Yet, even if the report could be construed as specifying a standard of care and that the standard obligated Graves to take a history of Isaac and subject him to a physical examination, question remains as to whether Graves did that. Nothing in the report says that he did not and, again, we are limited to perusing the report. Rather, Bresler opines that the records given him did "not reveal *documentation* of a thorough history and physical." (Emphasis added). That Bresler did not find documentation of a history and physical is not to say that neither a history nor physical were taken.

7

Moreover, and assuming *arguendo* that the standard of care required Graves to take a history of Isaac and subject him to a physical, and that he did not do either, another problem arises. Logic dictates that discovery of an ailment based upon an examination of a patient means little without explanation of what the standard of care demands once the ailment is discovered, and Bresler said nothing about that. At most, he merely suggests that the complaints of Isaac "were not adequately addressed." According to the Supreme Court in *Palacios*, whether a doctor breached his duty to a patient "cannot be determined absent specific information about what the defendant should have done differently." *American Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d at 880. And, Bresler failed to inform those reading his report about what, if anything, should have been done to address Isaac's complaints pursuant to the unspecified standard of care. Thus, his report was indeed conclusory in this regard.

Similarly unexplained is the link between Graves' purported default and Isaac's death. It is not enough to merely state, as Bresler did here, that the failure to diagnose Isaac's pneumonia was the proximate cause of his death. *See Bowie Memorial Hospital v. Wright,* 79 S.W.3d 48, 53 (Tex. 2002) (holding that the causal relationship between the default and injury must be explained for the report to comply with §13.01(d)).

In sum, Bresler's report is not the fair summary of an expert's opinions regarding the applicable standards of care, the manner in which the care rendered deviated from those standards, and the causal relationship between the deviation and the injury allegedly suffered, as demanded by the Supreme Court in *Palacios* or this court in *Kirksey*, or *Chisolm*. Various of the elements needed to make the report adequate go unmentioned

while others are alluded to in a conclusory fashion.  Thus, Gonzales did not comply with art. 4590i, §13.01(d) of the Texas Revised Civil Statutes, and the trial court did not err in dismissing the suit per §13.01(e) of the same statute.

Having found at least one ground upon which the trial court relied to justify dismissal, we affirm the order of dismissal.


Brian Quinn
Justice