742 So.2d 1044 (1999)
Angela COLEMAN
v.
EAST JEFFERSON GENERAL HOSPITAL and Daniel Barrett.
No. 99-CA-187.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1999.
*1045 Thomas Corrington, The Corrington Law Firm, New Orleans, Louisiana, Counsel for plaintiff-appellant.
Thomas P. Anzelmo, Catherine M. Williams, Campbell, McCranie, Sistrunk Anzelmo and Hardy, Metairie, Louisiana, Counsel for defendant-appellee.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and SOL GOTHARD.
GAUDIN, Judge.
Appellant is Mrs. Angela Coleman, whose malpractice claim against East Jefferson Hospital was rejected by a trial judge in the 24th Judicial District Court. Mrs. Coleman had contended that a venipuncture had been negligently performed by a hospital nurse, causing reflex sympathetic dystrophy. We affirm, finding no reversible error.
Following a bench trial on April 20 and 21, 1998, the district judge found that the nurse, Daniel Barrett, had not caused the injury complained of and that neither the nurse nor the hospital had breached the applicable standard of care.
On appeal, Coleman argues initially that the trial judge erred in placing too much emphasis on the number of attempts made by the nurse to properly insert the needle. Further, appellant contends that the venipunctures were negligently performed and that consequently the doctrine of res ipsa loquitur should apply.
Mrs. Coleman was admitted to the emergency room on April 15, 1995, complaining of abdominal pain. Dr. Ivan Sherman ordered an intravenous injection of phenergan and other medications because Mrs. Coleman was dehydrated.
Barrett tried to insert the IV needle in Mrs. Coleman's right arm but he couldn't locate a vein. Barrett then went to Mrs. Coleman's right hand, where he inserted the needle two times before being successful on the third attempt. The emergency room record in evidence indicates that Mrs. Coleman was uncomfortable and that she tolerated the IV procedure poorly.
At trial, Mrs. Coleman called for cross-examination Cheryl Jeanfreau, the administrative director of East Jefferson Hospital's emergency department and an expert in intravenous therapy, and Dr. Warren Gottsegen, a vascular surgeon who treated Mrs. Coleman beginning on September 20, 1995.
Ms. Jeanfreau testified that there are no standards regarding the number of attempts a nurse can make before striking a vein. East Jefferson Hospital standards, however, are higher. If a nurse is unsuccessful after only two sticks, he or she should consult a second nurse or a physician. Neither Mrs. Jeanfreau nor another nursing expert witness, Linda Defelice, said that Barrett deviated from a recognized community standard. From the record, *1046 it is apparent that multiple sticks are not uncommon.
Mrs. Coleman was referred to Dr. Gottsegen by Dr. Joseph Rauchwerk, who felt that Mrs. Coleman had a condition called reflex sympathetic dystrophy. When Dr. Gottsegen first saw Mrs. Coleman, he confirmed Dr. Rauchwerk's diagnosis. Reflex sympathetic dystrophy is a partial contusion or injury to a peripheral nerve. Mrs. Coleman was in the early stages of RSD, Dr. Gottsegen said, i.e., swelling, discoloration, etc., and he prescribed Norvasc, a medication that dilates small blood vessels.
Dr. Gottsegen next saw Mrs. Coleman five months later. Because she had not responded well to either medication or therapy, Dr. Gottsegen performed surgery, a sympathectomy, on May 6, 1996. He said he then saw Mrs. Coleman three times post-operatively.
As a result of the surgery, Mrs. Coleman developed Horner's syndrome, a drooping of the eyelid treated with drops.
Dr. Gottsegen was asked if a peripheral nerve could be injured by a needle puncture in the back of the hand. He replied: "I suppose it can happen." Dr. Gottsegen would not, however, relate Mrs. Coleman's RSD to the needle insertions made by Barrett although Dr. Gottsegen did say that a "very innocuous, insignificant" needle placement has been identified with RSD.
In a medical malpractice action, a plaintiff carries a two-fold burden of proof. He or she must first establish by a preponderance of evidence (1) that the treatment fell below the ordinary standard of care expected of medical professionals in their medical specialty and (2) that there is a causal relationship between the alleged negligent treatment and the injury sustained. See Smith v. State DHHR, 523 So.2d 815, 819 (La.1988); and many other cases with similar holdings. Here, inasmuch as there is no direct proof or expert testimony that Barrett negligently made any insertion in a deep, penetrating manner or that he deviated from the recognized community standard by making four sticks, the trial judge's finding of no negligence was not manifestly wrong. Res ipsa loquitur cannot apply without a primary showing of some degree of negligence as the most plausible explanation of the injury complained of. Also, there is no direct proof or expert testimony indicating that Mrs. Coleman's RSD was in fact caused by a needle insertion.
This Court cannot reverse absent manifest error.
AFFIRMED.
GOTHARD, J., dissents.
GOTHARD, J., dissenting.
I dissent. I am well aware of the duel burden of proof required of the plaintiff to show causation and treatment which falls below the standard of care. However, I find the record clearly shows the treatment plaintiff received fell below the ordinary standard of care expected of medical professionals.
Plaintiff testified that four attempts were made to start the IV. The nurse who attempted to start the IV is deceased. Medical records of the hospital admission indicate that the patient was "very uncomfortable" and "tolerated the procedure poorly."
Testimony on the standard of care for venipuncture indicates that, while the policy regarding IV insertion for East Jefferson Hospital allows no more than two attempts, that is a deviation from community standards which puts no limit on the number of attempts.
In reasons for judgment, the trial court noted that it found plaintiff to be a very credible witness. I believe the live, credible testimony of the plaintiff should have been given more weight. Further, I find it inconceivable that four failed attempts to inset a needle into a patient's vein, which resulted in the injuries sustained is within the standard of care for this community.
*1047 Accordingly, I would reverse the trial court.