WALTER J. ROTHSCHILD, Judge.
I Jn this action for medical malpractice, plaintiffs appeal from a judgment in favor of defendants rendered in accordance with a jury verdict. For the reasons stated herein, we affirm.

Facts and Procedural History

Plaintiffs herein, Monique and Barry Guy, brought the instant suit for damages against Dr. Brian Bourgeois and Dr. Kenneth Coignet, as well as their insurer, St. Paul Fire and Marine Insurance Company. In their petition, plaintiffs allege that on Friday, June 2, 2000, Monique Guy began to experience abdominal pain, nausea and vomiting. Her husband brought her to the emergency room at West Jefferson Medical Center, where she received x-rays and *163 blood tests and was discharged with a prescription for an ultrasound of her gallbladder on the following Monday. On Saturday, June 1 c.3, 2000, Mrs. Guy’s pain, nausea and vomiting resumed, and she contacted her family physician, Dr. Kenneth Coignet. She saw Dr. Coignet the same day, and she alleged she showed him the prescription for the ultrasound. Dr. Coignet admitted her to West Jefferson Medical Center with a diagnosis of biliary colic and cholelithiasis, and incorrectly noted on her record that an ultrasound indicated the presence of gallbladder stones. Plaintiffs allege that no ultrasound was performed prior to her admission to the hospital.
Upon her admission to West Jefferson, Dr. Coignet asked for a general surgery consult, and Dr. Brian Bourgeois answered this call. Dr. Bourgeois examined Mrs. Guy and obtained a history from her on June 3, 2000, and he subsequently recommended a laparoscopic cholecystectomy which he performed on the following day, June 4, 2000. According to plaintiffs’ petition, Dr. Bourgeois did not seek to review the ultrasound report.
Plaintiffs allege that the surgery performed was unnecessary and that the pathology report indicated that no gallbladder stones were discovered during the procedure. Plaintiffs also allege that following the surgery, Mrs. Guy continued to have the same symptoms which originally caused her admission to the hospital. Although she continued to complain of pain, she was discharged on the evening of June 5, 2000.
The following evening, June 6, 2000, Mrs. Guy returned to West Jefferson complaining of pain, abdominal distention and constant vomiting, and she was readmitted to the hospital. On June 7, 2000, Mrs. Guy was seen by Dr. Bourgeois who believed that she was having complications from the laproscopic surgery. Over- the course of the next few days, Dr. Bougeois diagnosed Mrs. Guy with post-operative ileus, and he believed her ^symptoms were consistent with this diagnosis. When Mrs. Guy’s condition did not improve, Dr. Bourgeois ordered a CT scan on June 12, 2000 which the radiologist opined may have indicated appendicitis.
Dr. Bourgeois then recommended a second surgery, which was performed on June 12, 2000. During surgery, Dr. Bourgeois found a substantial amount of pus in Mrs. Guy’s abdominal cavity indicating the presence of infection. Dr. Guy removed Mrs. Guy’s appendix, which was inflamed. He also removed a portion of Mrs. Guy’s small bowel which was found to be necrotic. Plaintiffs allege that Mrs. Guy’s bowel was injured during the gallbladder surgery which was negligently performed by Dr. Bourgeois on June 4, 2000.
Following surgery on June 12, 2000, Mrs. Guy’s condition continued to deteriorate. Due to the sepsis she suffered due to the bowel injury, her body sustained multiple organ systems failure, including severe loss of pulmonary function, renal failure and heart failure. She remained in the intensive care unit for over one month and was not discharged from the hospital until July 31, 2000. Plaintiffs allege in their petition that Mrs. Guy developed additional permanent injuries as a result of the mismanagement of her care, including lung and back problems.
Plaintiffs allege that Drs. Coignet and Bourgeois breached the applicable standard of care to Mrs. Guy by failing to conduct a complete evaluation of her condition. They allege that Dr. Coignet breached the standard of care by incorrectly noting that an ultrasound revealed gallbladder stones when no ultrasound was ever performed. Also, they allege that Dr. Bourgeois breached the standard of care *164 by failing to confirm his diagnosis by review of available tests, and by unnecessarily removing a normal | ^gallbladder and causing injury to the small bowel during this surgery. Plaintiffs further allege that Dr. Bourgeois failed to aggressively diagnose the cause of Mrs. Guy’s prolonged postoperative problems, which caused further injury to Mrs. Guy. Plaintiffs conclude that based on these acts of commission or omission, Drs. Coignet and Bourgeois are liable for medical negligence and/or deviations from the standards of care.
This matter was submitted to a medical review panel, which rendered an opinion in favor of defendants on May 7, 2003. Plaintiffs then filed the present lawsuit against Drs. Coignet and Bourgeois and their insurer, St. Paul. A jury trial 'was held in this matter beginning on June 13, 2005. On June 17, 2005, the jury returned a verdict finding no breach of the appropriate standard of care on the part of either Dr. Coignet or Dr. Bourgeois. In accordance with this verdict, the trial court rendered judgment on June 24, 2005 dismissing plaintiffs’ suit against defendants. Following this judgment, plaintiffs filed a motion for judgment notwithstanding the verdict/motion for new trial which was denied by the trial court on August 6, 2005. Plaintiffs now appeal from this ruling.

Law and Discussion

In Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646, the Louisiana Supreme Court recently set forth the applicable standard of review from a jury verdict in a medical malpractice case:
Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirely and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. The appellate court must not rejweigh6 the evidence or substitute its own factual findings because it would have decided the case differently. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. However, where documents or objective evidence so contradict the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
935 So.2d at 650. (Citations omitted.)
In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along *165 with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La. R.S. 9:2794(A)
The Supreme Court of Louisiana discussed medical malpractice jurisprudence in Fusilier v. Dauterive, 00-151 (La.7/14/00), 764 So.2d 74, 79:
A physician is required to exercise that degree of skill ordinarily employed under similar circumstances by others in the profession and also to use reasonable care, diligence, and judgment. A physician is not required to exercise the highest degree of care possible; rather, his |?duty is to exercise the degree of skill ordinarily employed by his professional peers under similar circumstances. In a medical malpractice action, the plaintiff has the burden of proving, by a preponderance of the evidence, (1) that the doctor’s treatment fell below the standard of care expected of a physician in his medical specialty; and (2) the existence of a causal relationship between the alleged negligent treatment and the injury sustained, (citations omitted)
By this appeal, plaintiffs. contend that the jury erred when it failed to find that Dr. Coignet breached the standard of care based on evidence he made a mistake when he documented an ultrasound had been performed. Further, plaintiffs contend that the jury erred when it failed to find that Dr. Bourgeois breached the standard of care based on evidence that he did not see a gallbladder ultrasound or a radiology report on this patient prior to surgery and by failing to recognize the patient’s post surgical problems. Plaintiffs also urge this Court to address the issues of causation and damages which the jury did not reach.

Dr. Kenneth Coignet

Plaintiffs conténd that the record supports a conclusion that Dr. Coignet committed malpractice by incorrectly documenting in Mrs. Guy’s medical records that an ultrasound revealed the presence of gallbladder stqnes, when in fact an ultrasound was not performed. In support of this position, plaintiffs rely on the testimony of Mr. and Mrs. Guy, the testimony of Dr. Coignet, and the expert testimony of Drs. Bourgeois, Lee Sehon and G. Derek Weiss.
Monique Guy testified that on the date of her visit to Dr. Coignet’s office she was in extreme pain. She stated although she and her husband showed Dr. Coignet the prescription she was given for an ultrasound, she jsnever told Dr. Coignet she had an ultrasound done, nor did she hear her husband tell Dr. Coignet an ultrasound was performed.
Barry Guy stated he went to Dr. Coig-net’s office on June 3, 2000 with his wife who was in extreme pain and showed Dr. Coignet the ultrasound prescription given to them by the emergency room physician the previous night. Mr. Guy stated that neither he nor his wife told Dr. Coignet an ultrasound had been performed.
Dr. Coignet testified at trial that he made a notation in Mrs. Guy’s hospital record that an ultrasound was performed which indicated the presence of gallbladder stones. He stated he did not remember the Guys showing him a prescription for an ultrasound, but he stated that neither Mr. nor Mrs. Guy told him that an ultrasound had been performed. Dr. Coignet admitted in his testimony that no ultrasound had been performed and that he made a mistake in noting this in Mrs. Guy’s hospital records.
*166 The medical review opinion stated as follows:
As to defendant, Dr. Kenneth Coignet, there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
The reasons listed for this opinion were as follows:
1. There is a question of fact as to what conversation took place between Dr. Coignet and the patient regarding her emergency room visit.
2. Dr. Coignet made an adequate assessment, admitted the patient to the hospital, and made an appropriate surgical consultation.
|flAt trial, plaintiffs presented expert testimony to prove that incorrectly documenting an ultrasound in a patient’s hospital record is a breach of the standard of care. Plaintiffs relied upon the deposition testimony of Dr. Weiss, an expert in the field of general surgery, who stated that Dr. Coignet’s action in incorrectly noting in Mrs. Guy’s hospital records that an ultrasound had been performed constituted malpractice. Dr. Weiss stated that without the benefit of an ultrasound, it would be difficult for Dr. Bourgeois to make a definitive diagnosis as there could be a number of conditions causing plaintiffs symptoms.
However, defendants presented testimony that Dr. Coignet’s mistake in charting the ultrasound did not cause plaintiff to unnecessarily undergo gallbladder surgery. Thus, defendants contend that plaintiffs failed to meet their burden of proving medical malpractice against Dr. Coignet.
. Dr. Bourgeois testified that in making the determination to remove Mrs. Guy’s gallbladder, he relied on Dr. Coignet’s notation that an ultrasound revealed the presence of gallbladder stones. However, even without the ultrasound, Dr. Bourgeois testified that Mrs. Guy’s clinical presentation and history indicated the presence of gallbladder disease.
Dr. William Lee, defendant’s expert in the field of general surgery, testified that in light of Mrs. Guy’s clinical presentation, an ultrasound would have been the next thing to do in order to make a diagnosis. However, he stated that even without an ultrasound, Dr. Bourgeois decision to remove Mrs. Guy’s gallbladder was reasonable in light of the classic presentation of her symptoms which clearly indicated gallbladder disease.
Dr. James Sehon, a general surgeon and member of the medical review panel, testified at trial that an ultrasound should have been performed |inbefore Mrs. Guy was taken to surgery. Dr. Sehon also testified that Dr. Coignet made a mistake by indicating in Mrs. Guy’s hospital records that an ultrasound had been performed which showed the presence of gallbladder stones. However, Dr. Sehon testified that the medical review panel did not believe that Dr. Coignet committed malpractice in his treatment of this patient.
Plaintiffs argue that the evidence and testimony presented in this case as to Dr. Coignet clearly indicate that Dr. Coignet committed malpractice. Plaintiffs argue that Dr. Coignet’s mistake in charting the ultrasound is undisputed and they point to the fact that there is no evidence in the record which indicates Dr. Coignet’s actions were not negligent.
However, to prevail in a medical malpractice action, plaintiff must not only establish the standard of care and a breach of the standard of care, plaintiff must also establish that this conduct was the direct cause of plaintiffs injuries. Martin v. East Jefferson Gen. Hosp., 582 So.2d 1272 (La.1991). When there is no direct evidence *167 which establishes that the negligence or malpractice caused a plaintiffs injury, the plaintiff has failed to meet the burden of proof required by law. Coleman v.East Jefferson Gen. Hosp., 99-187 (La.App. 5 Cir. 9/28/99), 742 So.2d 1044 writ denied, 99-3070 (La.1/7/00), 752 So.2d 866.
In the present case, there is no dispute that Dr. Coignet incorrectly noted in Mrs. Guy’s hospital record that an ultrasound had been performed which revealed the presence of gallbladder stones. Dr. Coignet admitted that this was a mistake, and the evidence presented at trial indicates that this mistake constituted a breach of the standard of care. However, the evidence | presented in this case fails to indicate that this error caused Mrs. Guy’s injuries in this case.
Dr. Coignet testified that at the time he saw Mrs. Guy, she was very uncomfortable and screaming and vomiting continually. He stated that he performed a physical examination of her, and that he believed she was suffering from gallbladder disease. He stated that he had previously treated many patients with gallbladder disease, and that Mrs. Guy’s symptoms were consistent with such a diagnosis.
There was also physical evidence presented at trial that Mrs. Guy’s gallbladder was in fact diseased. Dr. Sehon testified that according to the surgical report from Dr. Bourgeois, the gallbladder was swollen, which indicated that it was diseased. Further, Dr. Sehon stated that the pathology report showed evidence of chronic inflammation and chronic cholecystitis which showed that the gallbladder was diseased. Dr. Sehon also testified that Mrs. Guy’s symptoms and the results of her lab work prior to surgery indicated the presence of gallbladder disease. Based on this evidence, Dr. Sehon concluded that the gallbladder surgery performed on Mrs. Guy was necessary in this case.
The record also contains the testimony of Dr. Eric Rau, an expert in general surgery and a member of the medical review panel. When asked about Dr. Coig-net’s mistake in indicating an ultrasound had been performed, Dr. Rau testified as follows:
I don’t think the mistake caused Dr. Bourgeois to take her to surgery. I think the mistake may have offered some additional information that Dr. Bourgeois may have used to make a decision for surgery. But honestly, if this lady would have had a normal ultrasound, she probably still would have gone to surgery, in my eyes, because her symptoms were consistent with gallbladder disease.
|iaThe evidence presented in this case supports the jury’s finding that plaintiffs failed to meet the requisite burden of proof that Dr. Coignet’s actions caused plaintiffs injuries herein. The jury heard all of the testimony and evaluated the evidence presented at trial, and determined that Dr. Coignet’s charting error did not cause an unnecessary surgery to remove Mrs. Guy’s gallbladder. Rather, the evidence supports a finding that surgery performed on Mrs. Guy was appropriate despite the lack of a ultrasound confirming the condition.
Although the opinion of Dr. Weiss conflicts with the other expert testimony presented, the jury apparently chose to credit the testimony of defendants’ experts rather than that of Dr. Weiss. We have carefully reviewed the record in this case, and we find a reasonable factual basis exists for the jury’s determination that Dr. Coig-net’s actions did not constitute malpractice. We fail to find the determination of the jury to be manifestly erroneous.

Dr. Brian Bourgeois

With regard to the actions of Dr. Bourgeois, plaintiffs first contend that the
*168 jury erred in failing to find that Dr. Bourgeois breached the standard of care by taking Mrs. Guy to surgery without first seeing the ultrasound or a report of an ultrasound. In support of this argument, plaintiffs rely on the testimony of Drs. Lee, Sehon and Weiss who testified that the standard of care required an ultrasound to be done prior to surgery. Plaintiffs further contend that the jury erred in failing to find that Dr. Bourgeois breached the standard of care by failing to timely recognize and provide appropriate treatment for Mrs. Guy’s post surgical problems.
1 isThe medical review panel found as follows with regard to Dr. Bourgeois:
1. The judgment to perform a chole-cystectomy based upon the patient’s presenting signs and symptoms was reasonable.
2. The patient may have experienced an unfortunate but known complication of cholecystectomy, intra-ab-dominal infection. Her treatment following both surgeries was within the standard of care.
At trial, Dr. Bourgeois testified that at the time of his initial examination of Mrs. Guy, he was under the impression that an ultrasound had been performed indicating the presence of gallstones. However, he further testified that given Mrs. Guy’s clinical presentation and symptoms, along with his physical examination, he believed that gallbladder surgery was indicated on this patient. He believed that her extreme pain and vomiting was caused by a gallbladder stone in the neck of the gallbladder. Dr. Bourgeois also testified that following surgery, he found evidence of a stone in Mrs. Guy’s gallbladder.
Plaintiffs presented the videotaped deposition of Dr. G. Derek Weiss who stated he reviewed all of the medical records in this case as well as the depositions of Mr. and Mrs. Guy, Drs. Bougeois, Coignet and Lee. Dr. Weiss determined that the standard of care in performing gallbladder surgery requires the surgeon to view the ultrasound and radiology report. He stated that without an ultrasound, Dr. Bourgeois had no way of knowing whether a stone was present or the nature and extent of the patient’s abdominal condition. Dr. Weiss opined that by taking Mrs. Guy to the operating room 114without viewing the ultrasound or radiology report, Dr. Bourgeois committed “clear malpractice.”
Dr. William Lee, defendant’s expert in general surgery, testified at trial that although an ultrasound should have been performed prior to surgery, it was reasonable for Dr. Bourgeois to rely on the statement of Dr. Coignet that an ultrasound had been performed. However, he also stated that it is not improper to take a patient to surgery based on their clinical presentation alone. In fact, Dr. Lee stated he operated on many patients where the ultrasound is negative for the presence of gallbladder stones, and he invariably finds gallbladder disease based on the clinical presentation alone.
Dr. Sehon testified that it was reasonable for Dr. Bourgeois to rely on the notes in the patient’s hospital records that an ultrasound had been performed. However, Dr. Sehon also testified that based on Mrs. Guy’s presenting symptoms, as well as the operative report, the pathology report, and other medical records including the laboratory report indicating an elevated lipase level, gallbladder surgery was indicated on this patient. Dr. Sehon testified that Mrs. Guy’s symptoms were very typical of gallbladder disease.
Defendants also presented the testimony of Dr. Eric Rau, an expert in the field of general surgery and a member of the medical review panel. Dr. Rau testified that it *169 was reasonable for Dr. Bourgeois to rely upon Dr. Coignet’s note regarding the ultrasound as a piece of information in the treatment of this patient. Dr. Rau testified that he absolutely disagreed with the belief that the standard of care required an ultrasound to be done prior to surgery. He stated that even if Mrs. Guy had presented with a normal | ^ultrasound, she should have gone to surgery, because all of her symptoms were consistent with gallbladder disease.
The record in this case indicates that the deposition testimony of Dr. Weiss conflicts with the testimony of the remaining physicians who testified at trial in this case. Where the testimony of expert witnesses differs, it is the responsibility of the trier of fact to determine which evidence is most credible. The jury in this case heard the testimony of all of the expert witnesses, and apparently chose to credit the trial testimony of Drs. Lee, Sehon and Rau over the deposition testimony of Dr. Weiss. Our review of the record in its entirety indicates that there is a reasonable basis for the factual findings of the jury. We thus fail to find manifest error in the jury’s determination with regard to the actions of Dr. Bourgeois.
Plaintiffs next contend that the jury erred when it failed to find that Dr. Bourgeois breached the standard of care by failing to timely recognize Mrs. Guy’s post surgical problem. Plaintiffs contend that Dr. Bourgeois failed to note the significance of the “markedly abnormal” bands on a white cell count differential, which were consistent with an effort on the part of Mrs. Guy’s body to fight off a “severe intra-abdominal insult.”
Dr. Weiss testified that the markedly elevated bands on June 5, coupled with the patient’s post operative symptoms including pain, nausea, vomiting and abdominal distention, indicated an intra-abdominal infection. Dr. Weiss opined that based on this evidence, Mrs. Guy should not have been discharged on June 5, and in his opinion, Mrs. Guy’s continuation of symptoms required re-operation by June 7. Dr. Weiss stated that Dr. Bourgeois violated the standard of care by not re-operating on Mrs. Guy prior to June 12.
|inThe testimony of defendant’s general surgery expert, Dr. Lee, indicated that Dr. Bourgeois’ decision to discharge Mrs. Guy on June 5, 2000 was reasonable and appropriate and in accordance with the acceptable standards of care. Dr. Lee also testified that when Mrs. Guy returned to the hospital on June 6, 2000 with additional complaints, Dr. Bourgeois’ diagnosis of post-operative ileus was a reasonable diagnosis. Further, Dr. Lee felt that Dr. Bourgeois’ decision not to order a CT scan prior to June 12, 2000 was reasonable and appropriate because Mrs. Guy’s condition became much worse on that date.
Dr. Rau testified that Dr. Bourgeois’ treatment of Mrs. Guy during her second hospitalization was reasonable and appropriate. He relied on Dr. Bourgeois’ notes of his physical examination of the patient that her abdomen was benign and he found no tenderness on June 9, 2000. Dr. Rau was questioned by plaintiffs’ counsel as to whether the lab results showing elevated bands should have caused Dr. Bourgeois to be concerned with his diagnosis of postoperative ileus. Dr. Rau testified that the most important fact in determining a patient’s medical condition in small bowel injuries is with the patient’s exam. Dr. Rau found that Dr. Bourgeois’ notes from these exams indicates that his course of treatment was reasonable under the circumstances.
Dr. Charles Thomas, a surgeon who practiced with Dr. Bourgeois’ group, testified that he examined Mrs. Guy on June 7, 2000, the day after her second hospital *170 admission. Dr. Thomas stated he agreed with Dr. Bourgeois’ diagnosis of post-operative ileus, as he did not find her condition on that date to be abnormal following a laparoscopic cholecystectomy. Dr. Thomas also found that the elevated bands in the patient’s white blood count |17did not definitively indicate that surgery was necessary. He stated that the laboratory findings were a small part of the overall picture of the patient’s medical condition.
The record in this case supports the jury’s determination that Mrs. Guy’s extended hospital stay and additional surgeries were not the consequence of any malpractice on the part of Dr. Bourgeois. All of the expert testimony in this case, including the testimony of Dr. Weiss, indicates that a perforated bowel as suffered by Mrs. Guy in this case is a known and accepted risk of gallbladder surgery, and not necessarily the result of negligence or malpractice.
Plaintiffs contend that defendants’ witnesses did not take into account all of the nurses’ evaluations of the patient, despite the fact that the nurses monitored the patient 24 hours a day, while Dr. Bourgeois saw Mrs. Guy only intermittently over the course of several days. However, the nurses’ notes are only part of the entire clinical presentation of this patient, and Dr. Thomas specifically testified that nurses’ observations often differ from a physician’s examination. Dr. Thomas, who also examined Mrs. Guy during her second hospitalization, testified that nothing in the nurses’ notes indicated to him that Mrs. Guy had a “surgical abdomen” prior to June 12, 2000, or that Dr. Bourgeois was negligent in the course of treatment of Mrs. Guy during this time period.
Although the record contains conflicting expert testimony with regard to Dr. Bourgeois’ post-surgery treatment of Mrs. Guy, the jury chose to credit the testimony of defendants’ experts over that of plaintiffs’ expert. Drs. Sehon, Lee, Rau and Thomas each testified that Dr. Bourgeois properly monitored and treated Mrs. Guy post-op-eratively. Based on this testimony |1Ras well as the other physical evidence regarding plaintiffs treatment, we find there is a reasonable factual basis in the record for the jury’s determination that Dr. Bourgeois did not violate the applicable standard of care in treating Mrs. Guy. We have carefully reviewed the entire record in this matter and we fail to find the jury’s factual determinations to be manifestly erroneous.

Conclusion

Accordingly, for the reasons assigned herein, the judgment of the trial court rendered in accordance with the verdict of the jury is hereby affirmed. Plaintiffs are to bear all costs of this appeal.

AFFIRMED.