Beth **FENLEY**, Individually and as Representative of the Estate of Dan Ray Fenley, Deceased, and Marlin Fenley, Appellants,

v.

**HOSPICE IN THE PINES**
**and Michael Devore,**
**M.D., Appellees.**

No. 09–97–496CV.

Court of Appeals of Texas, Beaumont.

Submitted May 27, 1999.

Decided Nov. 18, 1999.

Jeff Bates, Bates & Hoyt, Lufkin, Gary Lee, Houston, for appellant.

Curtis W. Fenley, III, Fenley & Bate, Lufkin, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

Beth Fence, individually and as representative of the estate of Dan Ray Fence ("Fence"), deceased, and Marlin Fence ("appellants"), bring this appeal from a summary judgment rendered in favor of Hospice in the Pines ("Hospice") and its medical director, Michael S. Devote, M.D. ("Devote").

The factual background, as alleged by the appellants' petition, is as follows: In March 1994, Fence sought medical care from Jane S. Tod, DO. ("Tod") for headaches, neck pain, and ringing in the ears. Tod ordered an MI of Fence's head and

spine and subsequently told Fence he had an inoperable and terminal brain tumor. Tod also told Fence he only had a few months to live, suggested pain management care, and referred Fence to Hospice. As a condition of admission into Hospice, Tod certified that Fence had a terminal condition with a life expectancy of six months or less. Devote, a volunteer medical director of Hospice, who had neither examined Fence nor reviewed the test results, also signed the certification form. Fence was accepted into the Hospice program. Two months later Fence suffered from a ruptured colon, underwent surgery, developed peritonitis, and subsequently died. Appellants alleged the ruptured colon was the result of the side effects of narcotics administered to Fence while under Hospice care. After Fence's death, while investigating the cause of the tumor, Beth Fence discovered that Fence never had a terminal brain tumor or any form of terminal condition. She subsequently initiated a negligence suit against Tod, Hospice, and Devore.

Four elements must be proven to prevail on a medical negligence cause of action: (1) the duty of the physician or health care institution/facility to act according to a certain standard; (2) a breach of that standard of care; (3) an injury; and (4) a causal connection between the breach and the injury. *Day v. Harkins & Munoz,* 961 S.W.2d 278, 280 (Tex.App.—Houston [1st Dist.] 1997, no writ); *Silvas v. Ghiatas,* 954 S.W.2d 50, 52 (Tex.App.—San Antonio 1997, writ denied).

Hospice and Devore moved for summary judgment arguing the evidence conclusively established that Hospice and Devore "did not breach a duty" owed to Fenley. More specifically, Hospice and Devore maintained that a physician-patient relationship did not exist between Devore and Fenley, that Hospice and Devore owed no duty to re-diagnosis or independently verify the diagnosis made by Todd, and that there was no evidence that Hospice or Devore failed to meet the standard of care

in Fenley's treatment. The trial court granted the summary judgment. Todd was subsequently dismissed with prejudice from the suit.

In two points of error, appellants argue the trial court erred in granting the summary judgment because the evidence established the existence of a material fact issue regarding whether Hospice and Devore owed and breached a duty to Fenley. More specifically, appellants contend a fact issue exists as to whether Hospice and Devore had a duty to use reasonable care in accepting Fenley into the Hospice program.

■ The summary judgment standard is well established. The movant must show there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). "Summary judgment is proper if the defendant disproves at least one element of each of the plaintiff's claims." *American Tobacco v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997); Tex.R. Civ. P. 166a(c). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the non-movant's favor." *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

## DUTY: THE PHYSICIAN–PATIENT RELATIONSHIP

■ Appellees assert that no physician-patient relationship existed between Devore and Fenley. "[A] physician cannot be liable for malpractice unless the physician breaches a duty flowing from a physician-patient relationship[.]" *Brown v. Shwarts*, 968 S.W.2d 331, 334 (Tex.1998). "[T]he question of duty is a question of law which must be decided before the issue of standard of care arises." *St. John v. Pope*, 901 S.W.2d 420, 424 (Tex.1995).

It is only with a physician's consent, whether express or implied, that the doctor-patient relationship comes into being.... [T]he duty to treat the patient with proper professional skill flows from the consensual relationship between the patient and physician, and only when that relationship exists can there be a breach of a duty resulting in medical malpractice.

*St. John*, 901 S.W.2d at 423.

In his affidavit attached to the motion for summary judgment, Devore states he was a volunteer medical director at Hospice during the time period in question. Through deposition testimony, he explained his understanding of his services with Hospice with the following statement: "It's a formality; that the rules and regulations, under which they operate, they require my medical signature on certain documents [in order for Hospice] to be paid." Likewise, Dr. Sid Roberts, also a medical director of Hospice, stated in his affidavit that no physician-patient relationship between the medical director and the Hospice patient was intended or implied. Gwen Regan, the executive Director of Hospice, testified that Devore received no payment for his services and that "he reviewed the paperwork and signed off on it, for us to meet the requirements."

The medical documentation pertaining to Fenley's care, however, indicates that Devore participated in Fenley's certification and admission into Hospice as, well as in his ensuing treatment and care. Likewise, the Hospice manual, which was attached to the motion for summary judgment, describes the medical director's participation as an important component of Hospice patient care.

According to the Hospice manual, patients are to be under the care of an attending physician, and patient care is initiated and continued through that physician's orders. However, as set out below, the manual also describes an extensive role to be provided by the medical director. The description of physician services contained in the manual is as follows:

*Physician Service.* Each patient is under the care of an attending physician.

*The Hospice Medical Director has over-all responsibility for the medical component of Hospice patient care* and, as a member of the Hospice Interdisciplinary Group, participates in the establishment of the plan of care, provides or supervises Hospice care and services and periodically reviews and updates the plan of care for each individual receiving Hospice care. *Certifies patients as being terminally ill with a prognosis of 6 months or less.* The Medical Director consults with the attending physician as necessary, and is available for consultation on palliative medical management. Hospice, through the attending physician and Medical Director, provides palliation and management of terminal illness and related conditions and also meets the general medical needs of the patient.

(Emphasis added). In addition, the medical director is contacted by Hospice staff in the event the attending physician is unavailable.

An individual electing to utilize the services offered by Hospice must be certified as being terminally ill with six months or less to live. The certification form, called the Attending Physician's Certification Statement, must be signed by both the patient's attending physician and a Hospice physician. Accordingly, Fenley's certification was signed by both Todd and Devore. In addition, the informed consent form obtained prior to Fenley's admission to Hospice contains the following statement: "I understand that my attending physician has authorized my admission to the Hospice program and will continue to direct my care and that *the Hospice physician will also review my plan of care.*" (Emphasis added).

The Hospice manual states that Hospice provides an "interdisciplinary approach to care," including physicians, nurses, social workers, specialized therapists, clergy, and others. The manual also states that "Hospice ensures that substantially all the core services of nursing, medical social services,

*physician services,* and counseling services are routinely *provided directly by Hospice employees.*" (Emphasis added). Devore acknowledges in his affidavit and in deposition testimony that he was a member of Hospice's interdisciplinary group and that his job duties included meeting with the group every two weeks to review patient care.

The manual provides that a written plan of care is established and maintained for each individual admitted into the program; care is provided to the patient in accordance with that plan. The plan is established and regularly updated by the attending physician, the medical director, and the interdisciplinary group. Devore's signature appears on Fenley's plan of care.

■ "The fact that a physician does not deal directly with a patient does not necessarily preclude the existence of a physician-patient relationship." *St. John,* 901 S.W.2d at 424. In the instant case, the Hospice manual establishes that the medical director is to take an active role, along with the attending physician, in the care and treatment of Hospice patients. Hospice policy outlines the medical director's role as a member of the interdisciplinary team who is involved in the establishment and maintenance of a patient's plan of care and "who assumes overall responsibility for the medical component of the Hospice's patient care program." Devore acknowledged that he served on the interdisciplinary group and that his duties included meeting with that group every two weeks to review patient care. Devore's signature appears on Fenley's certification, as well as his plan of care. In addition, the informed consent form signed by Fenley, notified Fenley of the medical director's joint role in his medical care. Based on these factors, we conclude a physician-patient relationship existed between Devore and Fenley.

## STANDARD OF CARE

■ "The threshold question in a medical malpractice case is the standard of

care." *Whittley v. Heston,* 954 S.W.2d 119, 122 (Tex.App.—San Antonio 1997, no pet); *Hall v. Tomball Nursing Ctr., Inc.,* 926 S.W.2d 617, 620 (Tex.App.—Houston [14th Dist.] 1996, no writ). Assessing the "standard of care demanded in medical malpractice cases requires skills not ordinarily possessed by lay persons." *St. John,* 901 S.W.2d at 423. Thus, the standard of care must be established by expert testimony. *Hall,* 926 S.W.2d at 620; *Chopra v. Hawryluk,* 892 S.W.2d 229, 233 (Tex.App.—El Paso 1995, writ denied). Uncontroverted testimony from an interested expert, such as the defendant doctor, may establish the standard of care and support a summary judgment if the evidence is clear, positive, direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. *Whittley,* 954 S.W.2d at 122; Tex.R. Civ. P. 166a(c). We may also look to Hospice's internal policies for evidence regarding the standard of care; however, those policies alone do not determine the governing standard of care. *See Denton Reg'l Med. Ctr. v. LaCroix,* 947 S.W.2d 941, 951 (Tex.App.—Fort Worth 1997, writ dism'd by agr.) (Hospital's internal policies and bylaws, as well as the standards of the Joint Commission on Accreditation of Health Care Organizations were considered in determining the standard of care.).

In an affidavit, Devore made statements regarding the standard of care. In pertinent part, his affidavit states the following:

> At the time of the incident in question, I was a volunteer Medical Director at Hospice in the Pines. I am familiar with the procedures and regulations of Hospice in the Pines. In accordance with Hospice policy, a patient electing to utilize services offered by Hospice must have certification by their attending physician that their life expectancy is six months or less, if the terminal illness runs its course. The attending physician must sign this certification statement, which is called the Attending Physician's Certification Statement.

> On May 28, 1994, Mr. Dan Ray Fenley was accepted into the Hospice program after his attending physician, Dr. Todd, signed the Attending Physician's Certification Statement, certifying that Mr. Fenley had a terminal condition. Dr. Todd also signed Hospice's Intake/Referral Form, which included a statement of Dr. Todd's diagnosis of Mr. Fenley, describing his condition as an "inoperable cyst on the brain stem; tumor." In accordance with Hospice policy, as volunteer Medical Director, I signed the Attending Physician's Certification Statement to certify that Dr. Todd had, in fact, diagnosed Mr. Fenley with a terminal illness. My knowledge of Mr. Fenley was based solely upon Dr. Todd's Attending Physician's Certification Statement that Dr. Todd signed. At no time did I ever meet with or see Mr. Fenley, review any of the medical records or charts regarding Mr. Fenley, or talk to Dr. Todd about Mr. Fenley.

> It is not the ordinary standard of practice for a medical director of a Hospice facility to re-diagnose Mr. Fenley after Dr. Todd had referred Mr. Fenley into the Hospice program....

> The appropriate standard of care for the Hospice Medical Director that signs the Certification Statement provides for reviewing the attending physician's diagnosis and verifying the diagnosis of the attending physician that the patient has been diagnosed with a terminal condition. The appropriate standard of care does not require an independent determination of whether or not the patient is terminal or that the attending physician's diagnosis is correct. Pursuant to current provisions of Hospice policy and medical standards, Hospice is required to rely upon the diagnosis of the attending physician since the care provided by Hospice is palliative and not curative. There is no requirement that the Hospice Medical Director actually examine

the patient or review any of the patient's medical charts before signing the Attending Physician's Certification Statement. My signature on the Attending Physician's Certification Statement simply certifies that the attending physician has actually diagnosed the patient as having a terminal condition.

At all time I complied with all Hospice regulations in accepting Dr. Todd's certification statement. I exercised due care with regards to Mr. Fenley and followed the rules and procedures outlined in the Medicare Hospice Manual, which is what any physician of ordinary prudence and skill, practicing in the same community, would have done under the circumstances. . . .

As a physician practicing in Angelina County, Texas, I am familiar with the standard of care for the procedures used by Hospice in 1994 and thereafter, and it is my opinion that all care provided to Dan Ray Fenley by Hospice and myself was in accordance with the appropriate standard of care for such, and was the same care that would have been provided by any agency, such as Hospice, in a similar community under similar circumstances. It is my opinion that the damages now complained of were in no way caused by the care provided to Mr. Dan Ray Fenley by Hospice or myself.

The affidavit of Sid Roberts, also a medical director of Hospice, contained similar statements:

The Hospice Medical Director co-signs the certification to certify the attending physician has made a diagnosis of a terminal illness for the patient and that, based on the written and verbal statements detailing the referral, compassionate care and symptom management as provided by Hospice is appropriate. It is not the duty of the Medical Director, nor is it the standard of practice of the Medical Director to re-diagnose or independently verify the diagnosis of the attending physician once the attend-

ing physician has signed the certification statement.

Pursuant to current provisions of Hospice policy and medical standards, Hospice relies entirely upon the diagnosis of the attending physician since the attending physician makes the referral diagnosis and directives of medical care. The patient's attending physician, not Hospice's Medical Director, at all times remains responsible for this patient's medical plan of care. The attending physician prescribes the appropriate treatment and orders Hospice employees to follow his orders in carrying out the plan of treatment. The Medical Director participates in interdisciplinary group planning to review the coordination of hospice care through the various service providers. Suggestions regarding symptom management may be made where appropriate, but are only carried out if subsequently accepted and ordered by the attending physician. No physician/patient relationship is intended or implied between the Hospice Medical Director and the patient.

In their response to the motion for summary judgment, appellants relied upon the expert opinion of Neil Longley, M.D. (Longley), presented through deposition testimony, to present a fact issue regarding the standard of care. Appellants also presented excerpts of deposition testimony of Todd, Devore, and Ms. Regan. We now examine that evidence, as well as the Hospice manual, to determine if a fact issue exists regarding the standard of care.

### The Diagnosis

In deposition testimony, Todd admitted that he had signed the certification for Fenley's admission into Hospice, but he denied that he had ever diagnosed Fenley with a terminal condition. Instead, Todd testified Fenley had a brain cyst and sinus problems. He stated that he had never told Fenley that he had a terminal condition.

Longley gave his opinion of Fenley's MRI films and accompanying radiology report that had been originally produced by Dr. Mark Whitley to Todd. After reviewing the films, Longley made the following diagnosis:

"A normal MRI of the brain except for a minor variation in the cerebellum felt to represent a subarachnoid cyst. This is of no clinical significance. Sinusitis and mastoiditis is incidentally observed. . . ."

Longley testified he did not see either a brain tumor or anything that would indicate a terminal condition, and did not see anything abnormal that would require treatment. He stated a subarachnoid cyst does not cause any problems or require treatment. In offering his opinion of Dr. Whitley's original radiology report, Longley stated the report contained "no indication of any kind of abnormality of significance" and "certainly not a terminal condition." Longley offered the following conclusion regarding the diagnosis allegedly made by Todd:

[U]nless he had some overwhelming finding on his physical examination that would indicate to him that the man definitely had a death-dealing condition in opposition to the normal—essentially normal report which he received from Dr. Whitley. It would be—you know, it would be appalling to me to think that Dr. Todd would think that he had a condition which could kill him, much less in a short period of time.

### Admission to Hospice and the Certification Process

The summary judgment evidence established that Hospice care is appropriate only for patients who have been diagnosed with a terminal illness or condition with a life expectancy of less than six months. Hospice care is palliative,[1] rather than curative. In deposition testimony, Ms. Regan stated that it is extremely important that a person have a terminal diagnosis before being admitted to Hospice because of the type of care that is received. According to Devore, drug therapy is significantly different for a palliative care patient and, because Hospice patients have a limited life expectancy, drug therapy is given without consideration of the side effects of medications. Ms. Regan also testified there is a potential for adverse reactions to some of the medications, long-term effects of drug therapy, and a potential for organ damage. In addition, a "do not resuscitate" order is included in a patient's certification for Hospice care. Ms. Regan stated such an order would not be appropriate for a patient that did not have a terminal condition.

For the above stated reasons, as a condition of admission into the Hospice program, a patient electing to use Hospice care must be certified as having a terminal condition with a life expectancy of six months or less. The Hospice policy manual states that the "admission process is to ensure that eligibility requirements have been met. ⋮ . ." The attending physician's statement on the certification form is as follows:

As attending physician of this patient, I certify that his/her life expectancy is six months or less if the terminal illness runs its normal course. I have informed the patient and the family of this prognosis and thereby certify the first 90 day election period for the Medicare Hospice Benefit. As a patient certified for hospice care, I do not consider it appropriate to resuscitate this patient. At the time of his/her death, I am willing to sign the death certificate.

The Hospice physician's certification, also contained in the patient's certification form, states:

As Hospice physician, I certify that this patient has a reasonable, medically predictable life expectancy of six months or less.

---

1. Palliative care is defined as "intervention services that focus primarily on the reduction or abatement of physical, psychosocial, and spiritual symptoms of a terminal illness." TEX. HEALTH & SAFETY CODE ANN. § 142.001(19) (Vernon Supp.1999).

Ms. Regan testified that it is a state requirement to have two doctors' signatures on the certification statement. Devore stated that the reason the state requires two signatures for a certification of a terminal condition is not just for financial considerations but also because of the importance of ascertaining that a patient is terminal before subjecting the patient to Hospice care. He stated that it is "very important" to know whether or not a person has a terminal condition before receiving palliative care. Devore admitted that Hospice care would not be appropriate for a person who did not have a terminal condition, and that he would not certify someone who was not terminal. Similarly, Devore admitted that it is medically inappropriate to treat someone for a condition they do not have if it causes the patient harm.

Ms. Regan indicated that Hospice policy requires, or at least desires, that the attending physician furnish Hospice with a complete copy of the patient's chart; however, there is no requirement that the medical director review the patient's medical chart or actually speak directly with the attending physician prior to signing the certification. Devore stated he would generally know the diagnosis and prognosis before signing the certification. Ms. Regan testified that the medical director makes no independent determination of whether the patient is terminal, but instead relies entirely on the diagnosis of the attending physician.

Todd testified he had suggested Hospice care to Fenley because he felt it would provide "the best management team" for Fenley. In Todd's opinion, Hospice care includes not only palliative care for the terminally ill, but is also appropriate for disabled persons or persons in "intractable pain." Todd denied telling Devore or Hospice that Fenley had a terminal condition. He stated he "really didn't think [Fenley] had a terminal condition," but he signed the certification form "for Hospice care . . . because that was the form they sent to [him]." He stated he felt Fenley was a good candidate for Hospice care, not because he had a terminal condition, but because he was in intractable pain. Todd testified he informed Hospice that Fenley had an arachnoid cyst which did not require any treatment. When asked how Hospice got the information that Fenley had a terminal condition, Todd stated, "Apparently the arachnoid cyst got interpreted as an arachnoid tumor."

In explaining the standard of care for certification of a patient for Hospice care, Longley testified it would be inappropriate and below the applicable standard of care for Devore to sign the certification, without examining Fenley, without reviewing his medical chart, and without actually speaking with Todd. In light of Todd's deposition testimony that he did not think Fenley had a terminal condition and that he only referred him to Hospice for pain management, Longley stated "[I]t is absolutely not what is stated by this certification, and I presume that this is a legal document to obtain Medicare benefits. . . . [T]o me, he's stating that this man had a terminal illness and would certify that he needs this type of care." Longley additionally made the following statements:

If Dr. DeVore [sic] did not personally attend Mr. Fenley, if he did not examine him, if he did not read his chart, and if he did not talk to Dr. Todd, if he didn't talk to the patient or see the patient prior to signing this certification statement, then I would assume that the certification statement would be fraudulent . . . . certainly beneath the standard of care for a physician to state that.

. . . .

I think it's below the applicable standard of care.

### Conclusion

Devore's affidavit states that the Hospice physician is required to review the physician's diagnosis and verify the "diagnosis of the attending physician that the patient has been diagnosed with a terminal condition." The affidavits of both Devore and Roberts declare that the standard of care does not require the medical director

to examine the patient or review the patient's medical chart for the purpose of certifying a patient. Their opinion of the appropriate standard of care is disputed by Longley's testimony that it is below the standard of care to make such a certification without examining the patient or reviewing the medical records. In addition, Devore's statement that he signed the certification based solely on Todd's certification that Fenley had a terminal condition conflicts with the Hospice physician's statement on the form itself. The certification form explicitly states, "As Hospice physician, I certify that this patient has a ... life expectancy of six months or less." It *does not* say that the Hospice physician certifies that the patient's attending physician has diagnosed the patient as having a life expectancy of six months or less. Thus, we conclude there is evidence that material fact issues exist regarding the applicable standard of care and Devore's breach of that standard. Point of error two is sustained.

 Appellants argue that Hospice did not follow its own admission policy when it admitted Fenley into the program. In order to be accepted into the program, a patient must be terminally ill with a prognosis of six months or less to live. As stated in the Hospice manual, "The admission process is to ensure that eligibility requirements have been met and facilitate a smooth transition of the terminally ill patient into the Hospice program." Appellants maintain there is a fact issue as to whether Hospice breached the acceptable standard of care in admitting Fenley into its Hospice program. We agree. The provisions of the Hospice manual regarding patient admission and the actions of Devore in certifying Fenley as having six months or less to live raise a fact issue regarding breach of the standard of care.

 Additionally, "[u]nder the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment ..." *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex.1998). In determining a principal's vicarious liability, "the proper inquiry is whether the agent was acting within the scope of the agency relationship at the time of committing the act." *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 99 (Tex.1994). The Hospice manual states that the medical director is an employee of Hospice. Indeed, both Devore and Regan acknowledged that Devore was serving as Hospice's volunteer medical director. Hospice does not dispute that Devore was acting as its agent in certifying Fenley for Hospice care. Thus, Hospice would be vicariously liable for any negligent acts of Devore. Consequently, any fact issue raised as to Devore's breach of duty in his role as Hospice's medical director is also raised as to Hospice. Point of error one is sustained.

Because we conclude Hospice and Devore failed to meet their summary judgment burden, we reverse the judgment of the trial court and remand the cause for trial on the merits.

REVERSED AND REMANDED.