FREDERICKA HOMBERG WICKER, Judge.
 

 | ¿This is a medical malpractice proceeding in which summary judgment was granted in favor of defendants/appellees Dr. Barrett J. Day, M.D. (“Dr. Day”) and the Louisiana Medical Mutual Insurance Company. For the foregoing reasons, we affirm.
 
 [1]
 

 FACTS AND PROCEDURAL HISTORY
 

 Plaintiff/appellant Carlene Banister was treated for hyperthyroidism by the staff of Integrative Medical Services (“IMS”) in 2002. IMS was a clinic specializing in homeopathic treatment and other forms of alternative medicine.
 
 [2]
 
 The appellant alleges that she was introduced to Dr. Day during her first visit to IMS and that she was informed that Dr. Day was IMS’s medical director. The - appellant further alleges that she was under the impression that her treatment at IMS was being monitored by Dr. Day. Dr. Day contends that he did not meet the appellant during her first visit to IMS and that he never examined her during any of her subsequent visits.
 

 IsDuring her course of treatment at IMS, the appellant was primarily treated by Claudia Thurman and Vicky Jennings, neither of whom was licensed as a nurse or a physician in the state of Louisiana. According to the appellant, Claudia Thurman interviewed her on June 11, 2002, took a
 
 *231
 
 live blood culture from her, and recommended to her that she take several different vitamins and enzymes. Over the next six months, the appellant alleges that she received numerous intravenous therapies from Claudia Thurman and Vicky Jennings. The appellant further alleges that on or about December 11, 2002 Vicky Jennings administered an injection of dimeth-yl sulfoxide to her and that this injection caused her to sustain severe and permanent damage.
 
 [3]
 
 The appellant concedes that Dr. Day did not examine her during her treatment at IMS.
 

 The appellant filed a complaint with the Louisiana Patients’ Compensation Fund (the “Compensation Fund”) on December 11, 2003. IMS and Claudia Thurman were made defendants therein. On January 20, 2004 the Compensation Fund informed the appellant that IMS and Claudia Thurman were not qualified health care providers pursuant to La. R.S. 40:1299.41(A)(10). On January 20, 2004, the appellant filed a supplemental complaint with the Compensation Fund. Dr. Day was named as a defendant in the supplemental complaint. Dr. Day submitted a LAMMICO Narrative to the Compensation Fund. In the narrative, Dr. Day admitted that he was aware that Claudia Thurman and Vicky Jennings had provided intravenous therapy to IMS patients without a physician’s order.
 

 A medical review panel was convened to address the appellant’s claim in accordance with La. R.S. 40:1299.47. On January 27, 2005, the medical review panel rendered a unanimous opinion finding that Dr. Day did not breach the |4applicable standard of care. More specifically, the opinion stated that there was “no documentation of a patient-doctor relationship ever being established” and that there was “no documentation that Dr. Day ever ordered intravenous therapy for the patient.”
 

 On February 11, 2005, the appellant filed a^ Petition for Damages alleging that she suffered “severe and permanent damage” as a result of her treatment by IMS. The appellant further alleged that Dr. Day “deviated from the appropriate standards of care in conjunction with the care rendered to her at Integrative Medical Services.” Dr. Day was deposed on September 28, 2006. He again admitted that he was aware that Claudia Thurman and Vicky Jennings had provided intravenous therapy to IMS patients without a physician’s order. Further, Dr. Day admitted that the administration of intravenous therapy is an invasive procedure that can only be authorized by a physician.
 

 On March 10, 2008, Dr. Day filed a Motion for Summary judgment alleging that the appellant had not established that he had deviated from the proper standard of care and that the appellant had not provided the court with expert testimony to establish a causal connection between her allegations and her asserted damages. On May 22, 2008, the appellant filed a Motion for Partial Summary Judgment on the Issue of Liability. The appellant attached two affidavits to her Motion from physicians who had served on the medical review panel. In their respective affidavits, Dr. James Carter and Dr. Kevin Russ testified that “the submissions of the parties before the Medical Review Panel established the fact that the staff of Integrative Medical Services were engaged in the unauthorized practice of medicine.” In addition, Dr. Carter and Dr. Russ both
 
 *232
 
 testified that “if Dr. Barrett J. Day had knowledge of the unauthorized practice of medicine, and based upon the evidence which Dr. Day submitted to the review panel he did, then he had the |saffirmative duty to put a stop to it, and/or to notify the proper authorities of the unauthorized practice of medicine.”
 

 The opposing Motions for Summary Judgment came to hearing on June 23, 2008. Appellant’s counsel contended that the Petition for Damages contained both medical malpractice claims and general negligence claims. Dr. Day’s counsel vigorously objected and maintained that the appellant’s petition only alleged medical malpractice claims against Dr. Day. On July 11, 2008, the trial judge issued a judgment denying the appellant’s Motion for Partial Summary Judgment on the Issue of Liability and granting Dr. Day’s Motion for Summary Judgment. This timely appeal followed.
 

 The appellant assigns two errors to the proceedings below. First, she argues that the trial court erred in denying her Motion for Summary Judgment. Second, she contends that the trial court erred in granting Dr. Day’s Motion for Summary Judgment. For the purposes of judicial economy, we will consider these assignments of error together.
 

 LAW AND DISCUSSION
 

 Standard of Review
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.
 
 See, e.g., Prince v. K-Mart Corporation,
 
 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248. Summary judgments are currently favored in the law and the rules should therefore be liberally applied.
 
 Carr v. Wal-Mart Stores, Inc.,
 
 00-896 (La.App. 5 Cir. 10/31/00), 772 So.2d 865, 866,
 
 writ denied,
 
 00-3247 (La.1/26/01), 782 So.2d 636. It is well settled that a motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file show there is no genuine issue of material 1 (¡fact such that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966;
 
 Ekere v. Dupont Chemical Plant,
 
 99-1027 (La.App. 5 Cir. 2/16/00), 757 So.2d 33, 34,
 
 writ denied,
 
 00-778 (La.4/28/00), 760 So.2d 1181. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy under which coverage could be afforded.
 
 Reynolds v. Select Properties, Ltd.,
 
 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
 

 Medical Malpractice Claims
 

 The Louisiana Medical Malpractice Act provides the sole remedy for medical malpractice claims in Louisiana. “Malpractice” is defined as “any unintentional tort or any breach of contract on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.” La. R.S. 40:1299.41(A)(8). Therefore, in order for a plaintiffs claim to be considered a malpractice action under the Medical Malpractice Act, the negligence or contract claim must be predicated on “health care or professional services” rendered by a health care provider “to a patient.”
 
 Delcambre v. Blood Systems, Inc.,
 
 2004-0561 (La.1/19/05), 893 So.2d 23, 27.
 

 La. R.S. 9:2794 provides, in pertinent part:
 

 A. In a malpractice action based on the negligence of a physician ... the plaintiff shall have the burden of proving
 

 (1) The degree of knowledge or skill possessed or the degree of
 
 *233
 
 care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances
 

 (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill
 

 (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care, the plaintiff suffered injuries that would not otherwise have occurred.
 

 17(emphasis added).
 

 To overcome the burden of La. R.S. 9:2794, a plaintiff must show that a genuine issue of material fact exists as to each of the elements of La. R.S. 9:2794. La. C.C.P. art. 966 C(2). Generally, expert testimony is required to establish the applicable standard of care and whether or not the standard was breached, unless the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.
 
 Samaha v. Rau,
 
 2007-1726, p. 4 (La.2/26/08), 977 So.2d 880, 887-88;
 
 Pffiffner v. Correa,
 
 1994-0924, 1994-0963, 1994-0992 (La.10/17/94), 643 So.2d 1228. With respect to causation, a plaintiff must prove by a preponderance of evidence that he suffered injury due to a defendant’s conduct.
 
 See, e.g., Gordon v. Louisiana State University Bd. of Sup’rs,
 
 27,966 (La.App. 2 Cir. 3/1/96), 669 So.2d 736,
 
 writ denied
 
 96-1038 (La.5/31/96), 674 So.2d 263. When there is no direct evidence which establishes that the negligence or malpractice of a health care provider caused a plaintiffs injury, the plaintiff has failed to meet the burden of proof.
 
 Coleman v. East Jefferson Gen. Hosp.,
 
 99-187 (La.App. 5 Cir. 9/28/99), 742 So.2d 1044,
 
 writ denied,
 
 99-3070 (La.1/7/00), 752 So.2d 866.
 

 A motion for summary judgment may be supported with affidavits, provided that the affiant testifies on personal knowledge and sets forth such facts as would be admissible in evidence. La. C.C.P. art. 967(A). If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue of material fact, the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 In this case, the appellant attached two affidavits to her Motion for Partial Summary Judgment on the Issue of Liability. Both affiants were physicians who were on the medical review panel finding that no physician-patient relationship ^existed between Dr. Day and the appellant. According to the affiants, “if Dr. Barrett J. Day had knowledge of the unauthorized practice of medicine, and based upon the evidence which Dr. Day submitted to the review panel he did, then he had the affirmative duty to put a stop to it, and/or to notify the proper authorities of the unauthorized practice of medicine.” Thus, the appellant arguably established through expert testimony that an appropriate standard of care existed and that Dr. Day breached the standard of care.
 

 Moreover, we are of the opinion that there is a genuine issue of material fact as to whether a physician-patient relationship existed between Dr. Day and the appellant. A physician-patient relationship can form from an express or implied contract. La. R.S. 40:1299.41(A)(15);
 
 Delcambre,
 
 893 So.2d at 27 (“recovery under medical malpractice is allowed only where a physician-patient relationship exists as the result of an express or implied contract.”). In the instant case, the appellant contends that she was introduced to Dr. Day during her
 
 *234
 
 first visit to IMS and that she was informed that Dr. Day was IMS’s “medical director.” The appellant farther alleges that she was under the impression that her treatment at IMS was being monitored by Dr. Day. During her deposition, Vicky Jennings testified that Dr. Day was the medical director of IMS. During his deposition, Dr. Day admitted that his previous attorney filed a Petition for Injunctive Relief alleging that Vicky Jennings and Claudia Thurman contracted with him to become the IMS’s medical director. Dr. Day also admitted that Claudia Thurman created an advertisement welcoming him as the new medical director of IMS. However, Dr. Day stated during his deposition that he never became medical director of IMS and that, in his opinion, the term “medical director” has no legal significance.
 

 No reported Louisiana case has addressed the legal significance of a “medical director” and jurisprudence from other jurisdictions is scant. In
 
 Fence v.
 
 |9
 
 Hospice in the Pines,
 
 4 S.W.3d 476 (Tex.App.1999), the Court of Appeals of Texas analyzed whether a volunteer medical director’s actions established a physician-patient relationship. In
 
 Fence,
 
 the defendant physician argued that no physician-patient relationship existed between himself and the plaintiff, as does Dr. Day. The physician’s description of his position as “medical director” of the hospice in
 
 Fence
 
 is very similar to Dr. Day’s description of his position at IMS. First, the doctor testified at trial that his position was a formality; due to rules and regulations the hospice needed a physician to sign various documents.
 
 Id.
 
 at 479. Similarly, Dr. Day agreed to help IMS by examining patients and ordering treatments in order for IMS to continue as a viable business. In both cases, the doctors were not compensated for their time and worked voluntarily. The plaintiff in
 
 Fence
 
 was apparently under the impression that a physician-patient relationship existed due to a certification form signed by the plaintiff.
 
 Id.
 
 at 478. In the instant case, the appellant contends that she believed Dr. Day was directing her care because Dr. Day was introduced to her as IMS’s medical director during her first visit to the clinic.
 

 The defendant physician in
 
 Fence
 
 filed a Motion for Summary Judgment, arguing that -the evidence established that he did not breach a duty owed to the plaintiff because a physician-patient relationship did not exist between himself and the plaintiff.
 
 Id.
 
 at 478. .The motion was granted by the trial court. However, the Court of Appeals of-Texas reversed and remanded.
 
 Id.
 
 at 485. The Court of Appeals of Texas relied heavily on the hospice’s procedures manual, which provided, in pertinent part:
 

 Physician Service. Each patient is under the care of an attending physician. The Hospice Medical Director has overall responsibility for the medical component of Hospice patient care and, as a member of the Hospice Interdisciplinary Group, participates in the establishment of the plan of care, 1 ^provides or supervises Hospice care and services and periodically reviews and updates the plan of care for each individual receiving Hospice care.
 

 Id.
 
 at 479-80 (emphasis added).
 

 The court- concluded that a physician-patient relationship existed due to the physician’s status as medical director of the hospice.
 
 Id.
 
 at 480.
 

 According to the deposition of Vicky Jennings, IMS never had an employee manual, nor was she provided with a copy of IMS policies and procedures when she began her employment there. We cannot therefore rely on documents that were so important to the holding in
 
 Fence.
 
 Nonetheless, we find that there is a genuine
 
 *235
 
 issue of material fact as to whether an implied physician-patient relationship existed between Dr. Day and the appellant.
 

 However, the appellant has not met her burden of proving causation. The affidavits attached to the Motion for Summary Judgment on the Issue of Liability do not address causation. The appellant has presented this Court with no evidence establishing that Dr. Day’s medical malpractice proximately caused her injury. In fact, the appellant has presented this Court with no evidence that she suffered
 
 any
 
 injury whatsoever.
 

 The Third Circuit addressed a similar situation in
 
 Alex v. Dr. X,
 
 96-1196 (La.App. 3 Cir. 3/5/97), 692 So.2d 499. The
 
 Alex
 
 plaintiff was a man whose wife died of liver failure after doctors prescribed her medication for tuberculosis. It was later discovered post-mortem that the plaintiffs wife was not suffering from tuberculosis.
 
 Alex,
 
 692 So.2d at 500. The plaintiff alleged that the tuberculosis medication was toxic and caused further damage to his wife’s liver, but presented no proof that there was a causal connection between the medication and his wife’s death.
 
 Id.
 
 at 501, 506. The defendant filed a motion for summary judgment, contending that there was a “conclusive absence of proof that [the decedent] |, suffered any injuries from the treatment of [the physician] that would not otherwise have been incurred.”
 
 Id.
 
 at 507. The motion was granted by the trial court. The Third Circuit affirmed, reasoning:
 

 Even if a jury would be able to infer negligence from the mere act of [the physician] prescribing the medication before receiving the results of the tuberculosis test, the plaintiffs presented no proof that there was a causal connection between [the decedent’s] death and the medication that [the physician] had prescribed. (citations omitted). In other words, the plaintiffs presented no evidence that would tend to prove that the INH medication prescribed by [the physician] aggravated [the decedent’s] existing liver condition to the point of ultimately causing her death.
 

 Alex,
 
 692 So.2d at 506-07.
 

 Similarly, in the instant case, the appellant has presented no proof that there was a causal connection between the December 11, 2002 intravenous therapy and her alleged injuries. Nor has she submitted any evidence to this Court to indicate that she has actually sustained any injury whatsoever. Accordingly, we find that the appellant has not sustained her burden of proving that there existed a material issue of fact as to whether “as a proximate result of [Dr. Day’s] lack of knowledge or skill or the failure to exercise [the requisite] degree of care, [she] suffered injuries that would not otherwise have occurred.” The trial court correctly denied the appellant’s Motion for Summary Judgment on the Issue of Liability with respect to the medical malpractice claims against Dr. Day.
 

 Negligence Claims
 

 At the hearing on the respective Motions for Summary Judgment, the appellant’s counsel argued that the appellant’s Petition for Damages contained claims in medical malpractice claims in general negligence. Dr. Day contends that “[i]t is clear that Appellant’s Petition and cause of action sound solely in medical malpractice.” In his answer to the instant appeal, Dr. Day filed an Exception of Prescription contending that if this Court finds that non-medical [ ^malpractice negligence claims have been pleaded against him, such claims are prescribed.
 

 We find it extremely difficult to accept Dr. Day’s assertion that his wilful failure to take action against Claudia Thurman and Vicky Jennings “sound[s] solely in medical malpractice.” According to Dr. Day, should the trier of fact find that there is no physician-patient relationship be
 
 *236
 
 tween the appellant and Dr. Day, the appellant has no general negligence claim against Dr. Day for his willful failure to take action against Claudia Thurman and Vicky Jennings for practicing medicine without a license. However, in this case, we need not consider and resolve this issue. In Louisiana, general negligence claims are resolved by employing duty-risk analysis.
 
 Perkins v. Entergy Corp.,
 
 00-1372 (La.3/23/01), 782 So.2d 606, 611. The duty-risk analysis requires proof of five separate elements: (1) proof that the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (2) proof that the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) proof that the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
 
 Id.
 
 As aforementioned, the appellant has not met the cause-in-fact element or the damages element of a general negligence cause of action.
 

 Accordingly, we find no merit in the appellant’s assignments of error. Finally, having found that the trial court properly granted Dr. Day’s Motion for Summary Judgment thereby dismissing the entire case, the appellant’s Motion for Partial Summary Judgment on the Issue of Liability has become moot.
 

 ^CONCLUSION AND DECREE
 

 For the foregoing reasons, the judgment of the trial court is affirmed. Costs to be paid by appellant.
 

 AFFIRMED.
 

 [1]
 

 . The Louisiana Medical Mutual Insurance Company was Dr. Day’s insurer.
 

 [2]
 

 . IMS is no longer in operation.
 

 [3]
 

 . The primary use of dimethyl sulfoxide is as an industrial solvent. The chemical has only been approved by the FDA for the treatment of interstitial cystitis, a bladder disease. Food and Drug Administration, Import Alert IA6206, http://www.fda.gov/ora/fiars/ora_ import_ia6206.html (last visited April 21, 2009).