**Affirmed and Memorandum Opinion filed May 22, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00334-CR

## CASEY DEMON CARMON, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1229862**

## MEMORANDUM OPINION

A jury found appellant Casey Demon Carmon guilty of aggravated robbery and assessed a sentence of ninety-nine years' incarceration. In his sole issue on appeal, appellant claims the trial court committed charge error during punishment. We affirm.

### BACKGROUND

On April 22, 2009, Anthony James and Manuel Diaz were working at an O'Reilly's Auto Parts store when two males wearing hoodies entered the store shortly before closing. Anthony was helping a customer, George James, while Diaz was helping another customer. The two males entered the store and walked to the last aisle to the

back of the store. George told Anthony, "Something don't look right about that." George and his friend, Sherman McGee, left the store and went to George's truck. When George turned around, he saw the two suspects were behind the counter. George testified that he knew they were robbing the store and called 911. George and McGee walked around to the side of the building "[j]ust to get out of the way in case they come out shooting or something," and waited for the police to arrive.

Anthony testified that, when he saw the suspects enter the store with hoods over their heads, he thought they were going to rob the store. When George and McGee left the store, Anthony moved toward Diaz "to tell him what was about to happen" when the two suspects came around the corner. One of the suspects had a gun and demanded that Anthony and Diaz give them money. The hoodie of the suspect with the gun fell off and Anthony immediately recognized him as appellant. Anthony had seen appellant in the store on prior occasions with another customer. Anthony walked back to his register, opened the register, and removed the cash drawer. Appellant instructed Anthony to put the cash drawer on the floor between the counters. The appellant and his partner removed $500 from Anthony's cash drawer. As appellant was leaving the store with his partner, he made eye contact with Anthony and smiled at him.

When Diaz saw the hooded suspects enter the store, he "had a bad vibe something was going to happen." "[T]hey looked at every aisle as they walked in to make sure like the coast was clear." Diaz testified that appellant pointed a gun at him and Anthony. Appellant moved toward Diaz's register and put the gun to Diaz's waist, i.e., "physically touching [Diaz] with that gun," and demanded the money in the register. Diaz opened his register, and he saw appellant stick his hand in the drawer, but he did not see if appellant grabbed anything or not. Appellant demanded that Diaz open the other registers, but Diaz had to prove to appellant that his key would not open the other registers.

Houston Police Officers Mario Clinton and Larry Gibson received information concerning the April 22, 2009 robbery at the O'Reilly Auto Parts store, and conducted a

2

follow-up investigation. Through their investigation, Clinton and Gibson developed appellant as a suspect. On August 24, 2009, Anthony and Diaz each picked appellant out of a photospread and identified appellant as the suspect with the gun. That same day, Clinton and Gibson remained in the area of the O'Reilly's Auto Parts store. As Clinton and Gibson drove around that area in an unmarked car, they observed appellant walking on the side of the street. They tried to speak to appellant, but his speech was slurred and he did not appear to understand their questions. The officers believed that appellant was under the influence of alcohol or some type of narcotic, and arrested him for public intoxication of an unknown substance, took him to the city jail, and put a robbery hold on him so that they could continue the robbery investigation. Clinton and Gibson interviewed appellant on August 25, 2009. In that recorded interview, appellant talked about the armed robbery, referenced another person in the robbery, admitted to being in possession of the gun, and talked about how much money was stolen. The jury found appellant guilty of aggravated robbery as charged in the indictment.

During the punishment stage of the trial, the trial court admitted evidence of bad acts and extraneous offenses, including the capital murder of two individuals on or about June 3, 2009, the burglary of a habitation on or about October 3, 2007, and the burglary of three businesses on or about May 22, 2009, June 1, 2009, and August 9, 2009. Appellant had also been adjudicated delinquent on March 16, 2009, for evading arrest with a motor vehicle. In a statement to the police, appellant admitted to burglarizing the house of a friend.

The jury assessed punishment at ninety-nine year's incarceration. This appeal followed.

## ANALYSIS

In his sole issue on appeal, appellant claims that the trial court committed charge error by instructing the jury to consider, in assessing punishment, any extraneous crime or bad act for which it believed beyond a reasonable doubt appellant "could be held"

3

criminally responsible. Specifically, appellant complains that describing the State's burden of proof for punishment evidence as whether an accused "could be held criminally responsible" diminished the constitutionally mandated standard of actual "proof beyond a reasonable doubt."

In analyzing charge error, we first must determine whether there is error in the charge. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). If appellant failed to object to the charge error, we must apply the egregious harm standard. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Egregious harm exists when the defendant's rights are injured to the point that he was denied a fair trial, when the error (1) went to the very basis of the case, (2) denied the defendant a valuable right, or (3) vitally affected his defensive theory. *Zarco v. State*, 210 S.W.3d 816, 823 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The degree of harm is determined in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. An affirmative denial of an objection to the jury charge is the equivalent to a failure to object. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). Appellant admits that he did not object to the language contained in the jury charge and, therefore, the record must show egregious harm.

Section 3(a)(1) of Article 37.07 of the Texas Code of Criminal Procedure provides that the State may offer

> evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has been previously charged.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2011).

The trial court must instruct the jury in the punishment phase of trial that extraneous offenses must be proven beyond a reasonable doubt. *Huizar v. State*, 12

S.W.3d 479, 484 (Tex. Crim. App. 2000). The purpose of the instruction is to prevent the jury, when it is determining punishment, from considering an extraneous offense unless it first has decided beyond a reasonable doubt that the defendant has committed the offense. *Zarco*, 210 S.W.3d at 823.

The jury charge on punishment in this case states:

> You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.
>
> The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.
>
> Therefore, *if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment.* However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.[1]

Appellant complains of the italicized language in the third paragraph of the jury charge. The State does not argue that the charge is correct. Assuming the jury charge is incorrect, we nonetheless conclude that any error was not egregious.

During punishment, Juan Ibanez, who works for the Harris County Juvenile Probation Department, testified that he supervised appellant on probation. On March 16, 2009, appellant was adjudicated delinquent for evading arrest with a motor vehicle. Ibanez stated that appellant had successfully completed deferred adjudication for possession of marijuana. At the time appellant came under Ibanez's supervision,

---

[1] Emphasis added.

5

appellant was not attending school and had not completed high school. Appellant verbally agreed to enroll in a GED program at the community college, but did not follow through on his agreement. At the beginning of his probation, appellant was cooperative, i.e., he checked in and went in to see Ibanez. However, Ibanez stated, "It ended up developing almost like he became afraid of meeting with [Ibanez] because he appeared he was always afraid [Ibanez] was going to lock him up for some reason or another." During the summer appellant did not meet with Ibanez, violating his probation.

Brian Nichols testified about a burglary at his home on October 3, 2007. Nichols stated that appellant lived across the street with his grandfather and aunt and was his stepson's friend. Appellant spent the night at Nichols's house on occasion. When Nichols's home was broken into, he discovered that a gun safe—a five-foot tall steel cabinet with a lock—which was kept in a closet, had been pulled out of the closet and was laying on the floor right outside the closet door. The door to the safe was still open and there were "pry marks" on the side where the door would be if it were closed. Four guns had been stolen. The following day, some of Nichols's tools, a hammer, hacksaw blade, and two screwdrivers, which were normally kept in the garage, were found in a cupboard underneath a bathroom sink. The types of markings that Nichols had observed on his gun case would have been consistent with someone using the hammer to try to open the safe. Nichols stated that appellant would have known about the guns Nichols owned, the gun safe, and where the gun safe was located. The Sheriff's Department retrieved the tools, and DNA of samples taken from the tools were consistent with appellant's DNA, which was taken on December 13, 2010.

In the early morning hours of June 1, 2009, a burglary took place at City Trends clothing store. The perpetrators made a large hole in the exterior cinder block and two holes in the sheet rock. A deputy, who arrived at the scene while the burglary was in progress, saw three suspects abandon their car, a white Buick LaSabre, and run away. The vehicle, which was located in a trailer park directly behind City Trends, contained

6

men's clothing, with tags and on clothing racks, and a safe, which were identified as having been stolen from the store. Also in the car were two pry bars and a sledge hammer, with white powder identified as sheetrock dust. Deputies caught one of the suspects. He was covered in a "white powder substance," and had cuts and scrapes on his hands and arms. There was brush and barbed wire between City Trends and the trailer park that could have caused those injuries.

Appellant and another suspect were caught that night by two HPD officers who had heard over the radio that the Harris County Sheriff's Department was chasing three suspects, one of whom had been caught, but the other two were heading in the direction that the officers were heading. The officers saw two males standing in front of the convenience store, sweating profusely. One of them appeared to be a juvenile and was violating his curfew for juveniles under the age of eighteen in the City of Houston. The police talked to them. They had "the white dust that you would get from breaking out cinderblocks or sheetrock all on their shorts" and there "were a lot of tears, very consistent with jumping over wooden fences," and "their hands had scratches on them. Very consistent with jumping over wooden fences." The officers arrested appellant for violating the curfew.

On May 22, 2009, a burglary occurred at a Valu Plus Pawn shop. The window of a vacant building was broken to gain access, and a hole about two feet wide and four feet high was made in the wall that divided the vacant building and the pawn shop. Property valued at $15,000 had been taken from the shop. Surveillance video showed four suspects in the pawn shop, but it could not be determined what they looked like. Some of the items were recovered when they were brought to another Valu Plus Pawn shop. On May 27, 2009, appellant's girlfriend, Leatrice Allen, pawned a DVD player, which she had received from appellant and was one of the items stolen during the May 22, 2009 Valu Plus Pawn shop burglary, at a different Valu Plus Pawn shop. Allen told Houston

Police Officer Marcella Johnson that she had been "harassed and threatened" after speaking to Johnson about the Valu Plus Pawn shop burglary.

On the night of August 9, 2009, the police were called out to a burglary in progress at a Family Discount Food store. The police found a hole in the back of the business and a sledgehammer next to it on the ground. The police found appellant and the other suspects hiding in a nearby vacant lot, and appellant was taken into custody.

Johnson took a recorded statement from appellant on August 9, 2009. Appellant did not confess to the burglary of the Valu Plus Pawn shop, but admitted to being a lookout in the attempted Family Discount Foods burglary.

On June 3, 2009, two men working at the Mike's All Stop, a convenience store, were killed during the robbery of the store. One victim had been shot twice and the other had been shot three times. A break in the case came in November 2009, when the police received an anonymous tip. The investigation eventually led the police to appellant. The police met with appellant on December 4, 2009, and took a recorded statement in which appellant confessed to killing both clerks. Officer Dan Arnold testified that appellant's "entire statement about his actions were all self-serving." Appellant claimed it was an accident, but that was inconsistent with the crime scene, particularly where one victim had been shot three times, and the other victim two times. Based on this statement, appellant was charged with capital murder.

Finally, the State introduced evidence of appellant's violations of jail rules for possession or manufacture of a weapon; twice refusing to obey an order; destroying, altering, or damaging county property; fighting; and tampering.

During the State's closing argument during punishment, the prosecutor stated the following about the State's burden of proof on the extraneous offenses:

> . . . And then the charge goes on to talk about what the State has to prove regarding extraneous conduct or bad acts. Extraneous conduct is just other things that the defendant has done besides the aggravated robbery for

8

which you've already found him guilty of. All of these crimes we've proven to you over the last week or so, the ones he talked about in his statement, the things he admitted to doing, the bad acts or other crimes, *you can consider those when deciding the appropriate punishment as long as you feel the State has proven them to you beyond a reasonable doubt, the same standard you used in deciding whether or not he was guilty.* If you believe that we have and I believe we have, then you may consider all of that evidence in deciding what the appropriate punishment is.[2]

Appellant's counsel similarly stated the following about the burden of proof set forth in the charge:

Now, it also states that you've heard evidence of unadjudicated offenses, offenses where Mr. Carmon has not been found guilty. Those are unadjudicated offenses. *You may consider those unadjudicated offenses, as the jury instructions say that you may, if you find it's proven beyond a reasonable doubt.*

\* \* \*

*. . . If you find it beyond a reasonable doubt, then you must consider that. If not, then you don't have to consider that.* That is entirely up to each juror.

. . . You know you've convicted him of aggravated robbery. We know that he must be accountable for that, but for these other matter, *I really would like you to consider very deeply whether or not they've been proven beyond a reasonable doubt.*[3]

Here, the record shows that the State introduced substantial evidence of several extraneous offenses, which included capital murder and multiple burglaries, most of which occurred over a span of just a few months. Appellant did not controvert this evidence. Even without an instruction on the proof beyond a reasonable doubt standard, courts have not found egregious harm where the extraneous offense evidence is strong and uncontroverted. *See, e.g.*, *Martinez v. State*, 313 S.W.3d 358, 370 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that the trial court's failure to instruct jury

---

[2] Emphasis added.

[3] Emphasis added.

on burden of proof on unadjudicated offenses did not result in egregious harm where the evidence of those offenses was clear, strong, direct, and uncontested, and the offense for which the appellant was tried was violent in nature); *Huizar v. State*, 29 S.W.3d 249, 250–51 (Tex. App.—San Antonio 2000, pet. ref'd) (stating that "[w]hile a sentence of 99 years may seem to be egregious harm that requires reversal, the sentence is within the range of punishment for sexual assault," but holding that failure to instruct the jury on the reasonable doubt standard during punishment was harmless under *Alamanza*, even though the State had commented during closing argument that it had no burden of proof during punishment, where the State relied on substantial evidence of extraneous conduct in seeking punishment); *Yates v. State*, 917 S.W.2d 915, 923–24 (Tex. App.—Corpus Christ 1996, pet. ref'd) (holding that the absence of a reasonable doubt instruction "may have eased the State's burden, but it ultimately had little effect because of the uncontroverted nature of the evidence" of the extraneous crimes and acts; therefore failure to instruct the jury did not result in egregious harm).

The jury was entitled to believe that appellant had committed all the above-described unadjudicated offenses beyond a reasonable doubt. Moreover, in the aggravated robbery of the O'Reilly's Auto Parts store—the offense for which appellant was convicted in this case—appellant placed the gun at the waist of Diaz, "physically touching [Diaz] with that gun." Both the prosecutor and appellant's trial counsel explained to the jury that it could consider the extraneous offenses only if it believed that the State had proven those offenses beyond a reasonable doubt. Finally, the first paragraph of the jury charge tracks article 37.07, § 3(a)(1). *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) ("Following the law as it is set out by the Texas Legislature will not be deemed error on the part of the trial judge.").

Based on our review of the charge, the state of the evidence, the contested issues, the weight of probative evidence, the argument of counsel, and all relevant information revealed by the record of the trial as a whole, we are unable to conclude that error, if any,

10

is so egregious and created such harm that appellant did not receive a fair and impartial trial. We overrule appellant's sole issue on appeal.

We affirm the trial court's judgment.


/s/     Sharon McCally
          Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).